Hess v. Pegg.

LEWIS HESS, Respondent, v. CHARLES W. PEGG, et als.,
Appellants.

Washoe County Seat Act Constitutional.   The Act of February 17th, 1871, fixing the county seat of Washoe County at Reno, (Stats. 1871, 59) is not obnoxious to the constitutional provision against special and local legislation. (Art. IV, Sec. 21.)

Construction of Borrowed Clauses of Constitution.   Where a constitutional provision has been borrowed from another state, after its meaning has been judicially determined by such state, the construction so put upon it is deemed adopted with the language.

Judicial Inquiry as to Special and Local Legislation.   As the legislature has no authority to enact a local or special law when a general one can be made applicable, it is competent for the courts, in case of a special or local act properly presented to them, to inquire whether or not a general law could have been made applicable.

Construction of Article IV, Section 21, of Constitution.   It appearing that the constitutional provision against special and local legislation was borrowed from Indiana, and that previous thereto the Indiana courts had decided that a special or local law could not be enacted when a general one could be made applicable, and that a general law could be made applicable to the subject of the removal of county seats : Held, that the construction of the Indiana courts as to the meaning of the provision was adopted, but not their application of it to the subject of county seats.

Judges as to When Special Legislation is Proper.   The decision as to whether a special or local law can be passed, or in other words, whether or not a general law can be made applicable, is primarily in the legislature; and its decision, though subject to review by the courts, will be presumptively correct.

Presumption where both General and Special Statutes.   Where, notwithstanding the existence of a general statute in relation to the removal of county

seats, the legislature passed a special act in reference to the removal of a particular county seat: *Held*, that the presumption was that the general act was not and could not be made applicable.

LEGISLATIVE POWER OVER COUNTIES AND COUNTY SEATS. The legislature has full and complete control of the entire subject of counties and county seats, save where prohibited by constitutional provisions.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The defendants, officers of Washoe County, against the removal of whose offices from Washoe city to Reno the injunction was obtained, were Charles W. Pegg, Sheriff; H. L. Fish, Recorder; J. S. Shoemaker, Clerk; Robert Fraser, Treasurer; Wm. Thompson, Assessor; and Wm. M. Boardman, District Attorney. The complaint was filed March 21st, and the injunction *pendente lite* ordered April 1st, 1871.

*Ellis & King* and *T. E. Haydon*, for Appellants.

I. It has been held in this state that the legislature may create a county, or change the boundaries of a county, or fix a county seat in a newly created county, and that such legislation was not subject to the objection of being special and local. *Clarke* v. *Irwin*, 5 Nev. 111. If that is a proper power for the legislature to exercise, it clearly carries with it the power to reëstablish or change the county seat if the public exigencies require, or the public necessities demand it. Again, Washoe County might have been divided, and one half given to Ormsby and the other half to Storey County. What, in that case, would have become of the county seat? The legislature might, in fact, have created a new county of Washoe, with the precise same boundaries as the present county, and fixed the county seat at Reno, if the public good had required it. Every step named would be constitutional, not local or special in the sense of the constitution, and the same result accomplished as in this case. The legislature cannot be denied the power to do directly that which may be done indirectly; it alone being the judge of the necessity of such legislation. 10 Howard, 536; 5 Nev. 111; 34 N. H. 275.

II. A county is a municipal corporation, and the legislature

may control its powers, and specially legislate as to its concerns, so far as such matters affect its entity as a county.   Const. Art. VII, Secs. 1 and 8;  *City of Virginia* v. *Chollar Potosi*, 2 Nev. 89;  13 Iowa, 402;  4 Iowa, 60;  10 Howard, 536;  4 Wheaton, 669;  36 Mo. 303;  Walker's Am. Law, 219;  2 Kent's Com. 275; 34 N. H. 275.

III.  We claim that the word "general," as used in Art. IV, Sec. 21 of the Constitution, is not the antithesis of "local," but refers to the operation of laws upon the people, and has no reference to territorial limits.   A general law is one that affects all those within its purview, or that stand in the same relation to it alike, though it may have only a local effect.   3 N. H. 321;  17 Cal. 547.   Thus, in Indiana, with a clause in her constitution precisely the same, a law regulating the taking of fish in a particular river in that state was held a general law, and constitutional.   29 Ind. 409;  see also 12 Pick. 344;  9 Greenleaf, 56;  5 Mass. 268; 5 Pick. 511.

IV.  But if the law under discussion is local or special, the legislature was the judge as to whether a general law could be made to apply.   29 Ind. 409;  7 Cal. 65;  33 Cal. 487;  21 N. Y. 517;  30 Barb. 24;  4 Wheaton, 316;  7 Blackford, 415;  32 Maine, 343;  5 Mass. 533;  *Clarke* v. *Irwin*, 5 Nev. 111;  *Hooten* v. *McKinney*, 5 Nev. 194.

V.  What is meant by the language of "when a general law can be made applicable"?  Clearly, where a general law can be justly, conveniently applicable;  can be made applicable, and answer the just purposes of legislation;  *i. e.*, best subserve the interests of that class or portion of the people, as the particular legislation is intended to affect.   5 Nev. 122.   The legislature, chosen from the body of the people, and knowing their local wants, can alone justly determine this question.

*Robert M. Clarke* and *R. S. Mesick*, for Respondent.

I.  The act in question is limited in its extent and operation to a part of the state and to a particular subject or thing, and is there-

3

fore local and special. Smith's Com., Secs. 276, 277, 278; 5 Nev. 111; 5 Nev. 194; 19 Iowa, 47.

II. At the time the act was approved, there was in force a general law for the removal of county seats. (Stats. 1867, 78) Of this the court will take judicial notice. It therefore appears with absolute certainty that a general law of uniform operation could be made applicable; and this, from the *decision* of the legislature.

The special law is therefore void. (Const. Art. IV., Sec. 21.)

III. Our constitutional provision, (Art. IV, Sec. 21) is borrowed from the constitution of Indiana, (Art. IV, Sec. 23). It had then been interpreted to deny to the legislature the power to remove a county seat. (*Thompson* v. *Com. Clay County.*) In borrowing the provision, the convention framing our constitution adopted the interpretation put upon it by the Indiana courts, and thus made the interpretation part of the constitutional law, and put it beyond the reach of the courts of this state. 3 Wis. 390; *Ash* v. *Parkinson*, 5 Nev. 15; *People* v. *Coleman*, 4 Cal. 46; *Anderson* v. *Millikin*, 9 Ohio, 579.

IV. The removal of county seats is the proper subject of a general law. All, or nearly all, the states have enacted general laws on the subject, and the inference is very strong that the general is the proper legislation. See general laws of California, 206; Texas, 1067; Michigan, 193; Kansas, 296; Iowa, 38; Indiana, 194; Missouri, 215; Nebraska, 46.

By the Court, WHITMAN, J.:

The legislature of this state, at its last session, passed an act fixing the county seat of Washoe County, after a certain date, at the town of Reno, in said county. Thenbefore, Washoe City had been the county seat. Respondent, upon his bill in equity, sought and obtained, from the district court in and for said county, an injunction *pendente lite*, restraining the appellants, county officers, from removing their offices and archives, as provided by the statute referred to. From that order this appeal is taken.

For the purpose of the present opinion, it will be assumed that

the respondent had rights which he could enforce, and that he has sought the proper remedy therefor.    It is claimed, on his part, that the statute is obnoxious to the twenty-first section of the fourth article of the state constitution, as follows: "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state."    This claim is based mainly upon two propositions.    First: that at the time of the passage of the statute under consideration, there was already in existence a general act upon the subject of the removal of county seats; hence, as is urged, indisputable proof that such a general law as provided by the constitution could be made applicable.    Second: that in Indiana, whence the constitutional clause quoted was evidently borrowed, its meaning had been judicially determined adversely to the statute resisted, before the adoption of such clause as part of the constitution of this state; and that such construction, by virtue of a well known rule, should be deemed adopted with the language.

The gist of the latter proposition has already been affirmed by this court.    *Ash* v. *Parkinson*, 5 Nev. 15.    Such is the general rule, subject to certain limitations.    Cooley's Const., Limitations, 52, and cases there cited.    It is not proposed to depart from it in this instance.    The question then arises, what was decided in the case mentioned, which was or could have been lawfully adopted, or should now be presumed to have been adopted, by the constitutional convention of Nevada?    By reference thereto, (*Thomas et als.* v. *Board Commrs. County of Clay et als.*, 5 Ind. 4) it will be seen that all therein that touches the interpretation or construction of the constitutional language, is, the decision that the legislature has no authority under the constitution to enact a local or special law, when a general law can be made applicable; and that it is competent for the courts to inquire whether a general law can be made applicable to the subject matter of a local or special law enacted by the legislature.

The framers of the constitution of this state may properly be held to have adopted this interpretation or construction of the language borrowed by them from the constitution of Indiana; but it by no means follows that they adopted or could properly be pre-

sumed to have adopted the remainder of the decision, which holds that the removal of county seats can be made the subject of a general law. That portion of the decision is simply the exercise of the power declared to exist in the court, and there may well be a difference of opinion whether such exercise of power was warranted even in the case under review; but whether so or not, that is a matter which cannot be held as a rule, or a constitutional interpretation or construction, but must always remain an exercise of judgment, based, under the law, upon the facts of each case as it arises. So far as the reported case shows anything on this point, it shows an undue assumption of power, and an erroneous exercise of judgment.

Primarily, the legislature must decide whether or not, in a given case, a general law can be made applicable. That decision may be reviewed, and upheld or reversed by the courts, (*Clarke* v. *Irwin,* 5 Nev. 124) but presumptively, the decision of the legislature is correct. As has been well said by Chief Justice Dillon, on an analogous subject: " When the public exigencies demand the exercise of the power of taking private property for the public use, is solely a question for the legislature, upon whose determination the courts cannot sit in judgment. What is such a public use as will justify the exercise of the power of eminent domain, is a question for the courts. But if a public use be declared by the legislature, the courts will hold the use public, unless it manifestly appear by the provisions of the act, that they can have no tendency to advance and promote such public use." *Bankhead* v. *Brown,* 25 Iowa, 540. This rule is of course to be applied when courts are deciding simply upon the act, in absence of other testimony.

So here, there being nothing before this court except the statute, unless it manifestly appear that a general law could have been made applicable, the one under discussion must stand. To be applicable, the law must meet the just purposes of legislation, and be calculated to as well subserve as any other the interests of the people of the state, or the particular class or portion to be affected. *Clarke* v. *Irwin,* 5 Nev. 111. Respondent claims that such is this case; and not only so as an abstract proposition, but that this legislature has manifested the fact, by passing such a general law. The inference is the other way. The general law referred to is operative

only under certain conditions. Did these conditions exist in this case? There is nothing before this court to show whether they did or did not. Perhaps imperative reasons of public policy, or the good of the people of Washoe County, demanded the Act of 1871.

The very passage of this special law raises the presumption that the general act was not, and could not be made, applicable. There is nothing to rebut this presumption.

That the legislature may, in a proper case, pass a law, either local or special, is undoubted: and was so held in Indiana, before the adoption of the constitution of Nevada. *Cash* v. *The Auditor of Clark County*, 7 Ind. 227. In another case from the same state, it is said: "There is no provision of the constitution prohibiting, in terms, special legislation on the subject of railroads; and from the peculiar character of the subject, we cannot say such legislation may not be proper. Special subjects may require some special legislation; and when it takes place, it will be for the court to judge, as in the Clay County case and the Lafayette murder cases, under Section 23 of Article IV of the Constitution, [identical with Section 21, hereinbefore quoted from the constitution of the state of Nevada] whether more general legislation could reasonably have been made applicable, (5 Ind. 4, and 7 Ind. 326); and also, whether such special legislation conflicts with any other constitutional provision." *Madison and Indianapolis R. R. Co.* v. *Whitenbeck,* 8 Ind. 217.

If it had been intended under the constitution to prohibit all special or local legislation, it would have been so written. The Supreme Court of Indiana, in a comparatively recent case, 1868, which, by the way, overrules the Clay County case before cited, goes further, and says: "It is clearly implied by that section, (23 Ind.; 21 Nev.) and we know it to be true in fact, that in many cases local laws are necessary, because general ones cannot properly and justly be made applicable. There are cases where a law would be both proper and necessary in a given locality or part of the state, where its subject is local, or where from local facts it is rendered necessary; but which, if made general, would either be inoperative in portions of the state, or from its inapplicability to such portions,

would be injurious and unjust." *Gentile* v. *The State*, 29 Ind. 409.

That special or local legislation is to be avoided, so far as practicable, is undoubtedly the teaching of the constitution; thus far and no farther it goes. Hardly any subject can be conceived more purely local than the fixing a county seat, and if in any case local legislation is proper, that is the one. The legislature has full and complete control of the entire subject of counties and county seats, save where prohibited or limited by constitutional provisions, as in Illinois, Iowa, Kansas, Michigan, Minnesota, Missouri, Ohio, Wisconsin and perhaps some other states which have escaped attention in this examination. It may act directly, or it may do so indirectly, by the action of agents or the assent of a majority or more of the citizens of a county; and this is not a delegation of legislative power, as has been frequently decided in analogous cases. *Hobart* v. *Supervisors of Butte County*, 17 Cal. 23. There is no reason why both the statutes herein referred to should not stand; that called the general one to serve its purpose; any special one to be enacted when the former fails to accomplish the proper and legitimate objects of legislation.

For this court to oppose its judgment to that of the legislature, excepting in a case admitting of no reasonable doubt, would not only be contrary to all well considered precedent, but would be an usurpation of legislative functions. It cannot be denied that the tendency in some states of this Union is that way, undoubtedly from good motives; but the sooner the people learn that every act of the legislature not found to be in " clear, palpable and direct conflict with the written constitution," must be sustained by the courts, the sooner they will apply the proper correction to unjust or impolitic legislation, if such there be, in the more careful selection of the members of that branch of the state government to which they have delegated and in which they have vested the " legislative authority " of this state. No court should, and this court will not, step out of the proper sphere to undo a legislative act; and therein, no court should, and this court will not, declare any statute void because unconstitutional, without clear warrant therefor.

As has been seen, no such warrant exists in this case.  The order of the  District Court granting an  injunction is therefore reversed, and the  cause  remanded, with  directions to  dismiss  the  bill  of respondent.

GARBER  J. : I dissent.