THE STATE OF NEVADA Upon the Relation of GEORGE D. QUIMBY and CLARA QUIMBY, Relators, *v.* CITY OF RENO, a Municipal Corporation, FRANCIS R. SMITH, Mayor, and WILLIAM A. LIGON, CHARLES E. COWEN, EDWIN S. SEMENZA, THOMAS H. HARVEY, JOHN T. MYLES and MARSHALL GUISTI, Councilmen of Said City, Respondents.

No. 3865

April 28, 1955.                     282 P.2d 1071.

*Harvey Dickerson,* Attorney General, of Carson City, and *R. K. Wittenberg,* of Reno, for Relators.

*Samuel B. Francovich,* City Attorney, and *Bruce D. Roberts,* Assistant City Attorney, both of Reno, for Respondents.

# OPINION

By the Court, BADT, J.:

Relators filed a proceeding in the nature of a quo warranto in the court below to set aside an ordinance of the city of Reno annexing certain adjacent territory. The district court dismissed the second amended complaint without leave to amend, holding that the complaint, which attacked the annexation ordinance on the ground that the petition for annexation did not contain the number of signatures required by the statute, did not state a claim upon which relief could be granted in the absence of allegations of abuse of discretion, want of good faith or fraud.

The specific question of law presented is whether the annexation ordinance was a finding that the initiatory petition has been signed by a majority of the property owners in the annexed district and, assuming it to be such a finding, whether the same was a final and conclusive determination and not subject to judicial review in

the absence of a showing of abuse of discretion, want of good faith or fraud.

The pertinent part of the statute in question is contained in the first portion of sec. 10.505, art. XII, charter of the city of Reno, 1947 Stats. 392, and reads as follows: "The city council shall have the power to extend the exterior boundaries or limits of the city so as to annex or include therein additional lands with the tenements, property, and inhabitants thereof, by the passage of an ordinance declaring said territory to be annexed; *provided,* that the majority of the property owners of the district proposed to be annexed first petition the city council to annex said territory * * *."[1]

Reno city ordinance No. 1016 ordained as follows: "Pursuant to a petition duly presented to the city council

---

[1]The remaining portion of the section, not involved in this opinion but to which reference is hereafter made, reads as follows: "* * * *and provided further,* that when the city council of the city of Reno deems it necessary to annex additional territory to said city of Reno, and the inhabitants of said territory have not petitioned for annexation, that the said city council shall pass a resolution declaring its intention to annex said territory, describing said territory to be annexed, and ordering a plat of the same to be filed in the office of the city clerk of said city, and notice to be given as to the time when the city council shall hear objections to the annexation of said territory on the part of the freeholders residing therein, and the residents of said city; said notice to be published one week in a newspaper in said city of Reno, and to be posted in at least three public places in said district to be annexed, and to be mailed to all known freeholders in said district sought to be annexed, citing them to appear and show cause, on the date named, why said land should not be annexed to said city, and giving the reasons why the said land should be annexed to said city; *and provided further,* that after said hearing if a majority of the freeholders residing in said territory sought to be annexed do not protest, the said city council shall pass an ordinance declaring said property to be annexed to, and be a part of, the said city of Reno, and shall order a plat showing said territory to be recorded in the office of the county recorder of the county of Washoe, and said territory shall then be a part of the said city of Reno and subject to all taxes and laws thereof; *and provided further,* that in the event a majority of the freeholders in said territory sought to be annexed protest against the annexation of said territory, that it will require a unanimous vote of the council to pass said ordinance annexing said territory to the said city of Reno."

of the city of Reno signed by the owners of the herein- after described real property, requesting the city council of the city of Reno to annex to, and make a part of, the city of Reno the hereinafter described real property, the exterior boundaries of the city of Reno are hereby extended to annex and include the following described real property * * *." This is followed by a metes and bounds description and includes property owned by the relators. Other sections of the ordinance provide that the annexed property shall be subject to the laws applicable to the city of Reno and entitled to the benefits of the city government, that plats of the property be filed and recorded, that the ordinance be published and be effective upon publication. All councilmen voted aye, and the ordinance was attested by the mayor and city clerk.

Relators alleged that prior to the enactment of the ordinance no sworn testimony was received on the question whether the petition was actually signed by the persons purporting to sign, whether they or any of them were in fact property owners of the district or whether they constituted a majority of such property owners, and further alleged positively that a majority of such property owners did not sign the petition. Relators did not allege abuse of discretion, want of good faith or fraud. Respondents state their position thus: "That the duty to make an investigation to determine the sufficiency of a petition for annexation rests in the first instance upon the city council, and * * * this determination is final and binding when called into question in a judicial proceeding." They cite McQuillin on Municipal Corporations, 3d Ed., p. 352, sec. 7.33, which reads substantially in the language just used, and which cites as authority some of the cases thereafter presented at length by respondents. The principal authority relied on is People v. City of Los Angeles, 133 Cal. 338, 65 P. 749, and there are further cited by McQuillin and by respondents State v. Self (Tex. Civ. Appeal), 191 S.W.

2d 756, and People v. Town of Ontario, 148 Cal. 625, 632, 84 P. 205.

It becomes necessary to examine these authorities in the light of the statutes involved, the nature of the ordinances enacted and the interpretation of these cases by later decisions. As People v. City of Los Angeles, supra, appears to be the leading California case on the subject, with reference to the particular facts there in question, and as it is the main authority upon which respondents place reliance and which apparently was the basis of the decision of the district court, we find it necessary to quote part of the holding of that court at some length. "The act of 1889, under which these proceedings were taken, provides that the boundaries of any incorporated town or city may be changed, or new territory annexed thereto, upon proceedings being taken as therein provided. Touching the petition therefor the statute provides: 'The council, board of trustees or other legislative body of any such municipal corporation, upon receiving a written petition therefor containing a description of the new territory asked to be annexed to such corporation, and signed by not less than one-fifth in number of the qualified electors of such municipal corporation, computed upon the number of votes cast at the last general municipal election held therein, must, without delay, submit to the electors of such municipal corporation, and to the electors residing in the territory proposed by such petition to be annexed to such corporation, the question whether such new territory shall be annexed to, incorporated in, and made part of such municipal corporation.' The complaint does not set out a copy of the petition, and the only defect therein alleged in the complaint or urged in argument is that it was not signed by at least one-fifth of the qualified electors of the city, computed upon the number of votes cast at the last general municipal election held therein. The jurisdiction of the city council to order an election depends upon the presentation to it of such petition signed by the requisite

number of electors. Whether it was so signed was a question of fact submitted by the statute to the decision of the council, and the question arising upon this branch of the case is whether the adjudication of that question of fact by the city council is conclusive. The act might have provided that that question should be submitted to the decision of a court or jury; but it is obvious that the city council, if so authorized by the statute, is as capable of its correct decision as any tribunal that might have been named, and that such decision is, under the statute, as conclusive as though made by any other tribunal to which the legislature might have submitted it. 'An inferior board may determine conclusively its own jurisdiction or power by adjudicating the existence of facts upon the existence of which its jurisdiction or power depends. Where, however, the power depends, not upon the existence or nonexistence of matters in pais, to be established by evidence, but upon allegations in a petition, a portion of the record, the question is not the same.' In re Grove St., 61 Cal. 453; Humboldt County v. Dinsmore, 75 Cal. 607, 17 Pac. 710; Farmers' & Merchants' Bank v. Board of Equalization, 97 Cal. 318, 32 Pac. 312. In Wells, Jur., § 61, it is said: 'Where the jurisdiction of even an inferior court is dependent on a fact which that court is required to ascertain and settle by its decision, such decision is held conclusive.' Freeman, in his work on Judgments, in speaking of tribunals acting judicially (section 531), says: 'As a general rule, whenever any person or persons have authority to hear and determine any question, their determination is, in effect, a judgment having all the incidents and properties attached to a similar judgment pronounced in any regularly created court of limited jurisdiction acting within the bounds of its authority. Hence, whenever any board, tribunal, or person is by law vested with authority to decide a question, such decision, when made, is res judicata, and as conclusive of the issues involved in the decision as though the adjudication had been made by a court

of general jurisdiction.' All such adjudications are conclusive against collateral attack, and as the statute has not, in the case at bar, given any appeal or review by a higher tribunal, it follows that it can be vacated only in the manner and upon the grounds that would justify the vacation of a judgment rendered by a court of record, and a mere error in the adjudication of a question of fact not procured by fraud, extrinsic or collateral to such question, is not a ground upon which it may be vacated, since, if it were, no adjudication of a question of fact would ever become final so long as new evidence could be had, or a different conclusion be reached upon the same evidence."

It is important to note from the foregoing (1) that the court there held that the statute submitted the question of fact as to the signing of the petition by the requisite number to the decision of the city council; (2) that it implied that the city council was required by the statute to ascertain and settled this fact by its decision; and (3) that the result of the filing of a petition signed by not less than one-fifth of the qualified electors of the city was that the city must call an election which, to effectuate annexation, must result in a majority vote of the electors of the city and the electors within the annexed territory.

State v. Self, supra, also concerned the sufficiency of a petition which did not effectuate an annexation (to the extent that it was a species of election) but initiated proceedings for an election. The court there significantly said: "Under the charter provision here involved, the petition was a step preliminary to the election itself. In some instances a petition may be a species of an election, but that is not true in this case." People v. Town of Ontario, supra, and many of the other cases relied upon likewise involved petitions that simply initiated proceedings for an election to decide the issue. The distinction was clearly recognized in the later California case of Willcox v. Engebretsen, 160 Cal. 288, 116 P. 750, 751.

Here the supreme court, referring to People v. Los Angeles, supra, and its allied cases and to other cases apparently holding in opposition, calls attention to the fact that it is necessary to state some of the fundamental distinctions not always noted and which tend to explain the apparent discrepancies. The court first accepts this proposition as being beyond dispute: "Where a statute requires such a petition to be filed as a condition precedent to the making of such order, the board or council has no power to make the order until a sufficient petition has been filed." Citing cases. "If the statute provides that such proceeding *may be begun* by the filing of a petition with the particular board or council having the authority, the fact that such body acts upon a petition which does not appear bad upon its face, and proceeds thereon according to law, is usually held to be conclusive of the sufficiency of the petition against any collateral attack. People v. Los Angeles, supra, was a case of this character." (Emphasis supplied.) While other distinctions are made, we conclude that under the Engebretsen case, the rule of the city of Los Angeles case and all allied cases is confined to a situation whereunder the petition in question simply initiates proceedings for the determination of the annexation by an election of the property owners, electors, residents etc., as the case may be.

We need refer then only to a few of the holdings which in our opinion conclusively establish the right to a review of the facts constituting the conditions precedent, in the absence of which the inferior board is without authority or jurisdiction to act, where the action of the board does not simply initiate election proceedings but in itself is a species of election which effectuates the annexation. The best reasoned of these cases we find to be Kenney v. Bank of Miami, 19 Ariz. 338, 170 P. 866, 868. In question was the legality of the board's order of disincorporation. Kenney relied upon the order of disincorporation, which recited the filing of a petition and

that it contained the signatures " 'of more than two-thirds of the persons paying property tax * * * in the preceding year and residing within such town, and such is found to be the fact.' " Kenney did not maintain that the petition contained the requisite number but insisted that the finding of the board was conclusive and not subject to be disproved by parol evidence. The town alleged that the petition for disincorporation did not contain the signatures of two-thirds of the persons paying property tax within the town in the preceding year and residing within the town at the time of the filing of the petition. It amplified by naming twenty-two of the persons appearing on the petition who, it was alleged, did not sign, and fifteen who signed under fraudulent representations or duress, and thirty-six who were not residing in the town at the time the board acted, and that many names were duplicated. The court said that the question of the conclusiveness of the order depended upon the terms of the statute and that if it imposed on the board the duty to ascertain and pass upon the facts its decision of the existence of those facts is final and conclusive, but where the existence of the facts is an indispensable condition to act and the board is not clothed with the power or machinery to find the facts, its determination is not final or conclusive. The court then held that the existence of the facts was a condition in the absence of which the board could not legally act, and since the law failed to enjoin the power and duty to find and settle the indispensable fact, the board's action was not conclusive. It held that "the actual fact of a petition of two-thirds" etc. must be presented before the board acquired jurisdiction of the subject matter. The court cited with approval an early New Mexico case (State v. Porter, 169 P. 471) which stated: "In Freeman on Judgments, par. 523, the rule is thus stated: 'Wherever the jurisdiction of the court not of record depends on a fact which the court is required to ascertain and settle by its decision, such decision, if

the court has jurisdiction of the parties, is conclusive, and not subject to any collateral attack.' But if the local board or other tribunal is authorized and empowered to take certain action only upon the petition of a majority of the property owners, taxpayers, or residents within a certain defined area or district, and is not vested with authority to determine whether or not the petition is signed by the owners of the required amount of property, residents, or taxpayers, then its action may at any time be shown to have been without jurisdiction and void, by establishing the fact that the petition on which it acted was not so signed."[2] The court repeats that the determination of the board does not conclude the question "for the reason that the Legislature has seen fit to make the board's jurisdiction depend upon the actual fact of two-thirds of the persons named, petitioning, and not upon the board's finding * * *." The court then states that if the allegation of lack of qualified signers is true, then the board never acquired jurisdiction.

To like effect is City of West University Place v. State, C.C.A. Tex. 1932, 56 S.W.2d 1081. In West End v. State, 138 Ala. 295, 36 So. 423, a like rule was adhered to even though the petition merely initiated election proceedings to determine incorporation of the town. Similar to this is Kamp v. People, 141 Ill. 9, 30 N.E. 680.

In accordance with the holding of these cases we must reject the contention of the respondents that under the charter provisions quoted: "The presentation of a petition is not jurisdictional in the sense that without a valid petition the council could not act, but a petition of this type is to be regarded more as a means of invoking action on the part of the council. The council has jurisdiction to annex territory irrespective of the petition

---

[2]Three later Arizona cases confirmed and approved this holding. Parnell v. State, 68 Ariz. 401, 206 P.2d 1047; Hunt v. Norton, 68 Ariz. 1, 198 P.2d 124, 5 A.L.R.2d 668; Town of South Tucson v. Board of Supervisors, 52 Ariz. 575, 84 P.2d 581.

being presented." If the contention contained in the last sentence is intended to refer to the alternative method of annexation recited in footnote 1, we must observe that such method is not to any extent whatever involved herein. The council in the instant case did not purport to initiate annexation of the territory of its own initiative upon notice and hearing. That the instant petition was simply "a means of invoking action on the part of the council" (in the sense of invoking such action as the calling of an election) we are unable to grant. The statute gave the city council "power to extend the exterior boundaries * * * of the city * * * by passage of an ordinance" and the city *ordained, pursuant to the petition,* that the boundaries were extended accordingly. To all intents and purposes (in the sense that the petition was a species of election) the petition effectuated the annexation.

People v. City of Los Angeles, supra, so strongly relied on by relators emphasizes that whether the initiatory petition *was signed by the requisite number of electors* "was a question of fact submitted by the statute to the decision of the council."

Respondents also rely upon State v. Holcomb, 95 Kan. 660, 149 P. 684, but the constitutional and statutory provisions there involved are so materially different from those here existing that the case affords little help. It is true that the case held that the finding of the county commissioners of the existence of the necessary facts (that the number of inhabitants exceeded 200 and did not exceed 2,000, that a majority were in favor of incorporation, etc.) was not subject to review and that its action was not "subject to defeat by a recount of the electorate made by a court at some subsequent time." It emphasized however: "It is not enough that the petition *state* that it is signed by a majority of the electors. It must *be* so signed." (Emphasis supplied.) It is important to note that the statutory authorization to the county commissioners to annex the territory included

full authority to make an investigation, at which, after publication of the petition, the commissioners found a majority of the taxable inhabitants to be in favor of incorporation. The court said that under the implications of the statute it was necessary for the board to determine the facts. The Kansas court approved Board of County Commissioners of Clay Co. v. Markle, 46 Ind. 96, which was similar in its nature and in its holding. The Markle case, like the Holcomb case, held that compliance with the statute did not rest on the statement in the petition that a required number had signed but on the actual fact that the required number did sign. The Indiana court held that when the petition had been presented, the number of electors signing, their qualifications, the presentation of their deed, and deposit of money, etc., all as required by the statute, were things to be ascertained and determined by the board. The Kansas case also relied on People v. Town of Loyalton, 147 Cal. 774, 779, 82 P. 620, in which the petition initiated proceedings looking toward an election for incorporation. Again the court in that case emphasized that by express provision of the statute the board was required upon a noticed hearing to ascertain and determine the facts. The Kansas case further relied on State ex rel. Crow v. Flemming, 158 Mo. 558, 59 S.W. 118, in which the court held that the decision of the board was exclusive. Here again however, the Missouri court held that the board was exclusively authorized and empowered by the state to determine the very facts which the state was attempting to question in quo warranto.

In discussing the cases upon which respondents rely, we have stressed the point that in such cases it was held that the statute in question vested in the inferior board the power to investigate and determine the facts. The writer of the note found in 5 A.L.R.2d 675, after noting that upon inquiry on certiorari the cases almost without exception run to the effect that the finding of

jurisdictional fact is not conclusive on the reviewing court, says: "It may happen that a statute in question contemplates that the tribunal's finding as to a particular jurisdictional fact shall be conclusive." Theoretically it would seem clear that there is a distinction between findings which are foundationally essential to jurisdiction and those dealing with matters intended for decision by the board in the exercise of its jurisdiction. These sundry inquiries lead us to the question of the legislative intent found in sec. 10.505, Article XII of the Reno charter. We think that nothing can be clearer than the wording of the statute itself that the power of the city council to annex adjacent territory was limited to a situation in which the majority of the property owners in the new proposed district first petition for such annexation. The council's power to act, its jurisdiction, is not called into play until such a majority petition is first filed. The statute contains no word or suggestion that the council investigate, determine or ascertain how many property owners were in the proposed new district, or whether the petitioners constituted a majority, or what constituted a property owner, or whether the signatures on the petition were valid, or whether they included, as purported, separate property owners, husband and wife, lessor or lessee, contracting purchaser, contracting seller, mortgagee in possession, or other concepts of ownership. Nor did the city council purport to find any of these things. Respondents contend that if there is not an express finding by the board of the sufficiency of the petition, such finding must be implied. If so, the implication would have to be found in the opening clause of the ordinance. It read: "Pursuant to a petition duly presented to the city council of the city of Reno signed *by the owners of the hereinafter described real property* \* \* \*." (Emphasis supplied.) By the owners, that is to say, by all of the owners. Yet, on its face, this cannot be so. This would include the relators themselves, yet the entire record justifies the conclusion that the relators did not sign the petition for annexation.

And the reason for the legislative limitation of power further appears from the statutory provisions for a second method of annexation. The same section provides an entirely different method. The first method, discussed above, arises out of the desire of a majority of owners of property in territory adjoining the city to become annexed to it. It is *their* petition. *They* desire to be annexed. They are willing to subject their property to the higher taxes of municipal government in return for the benefits to be obtained. However, under the second statutory method of annexation, the city council itself initiates proceedings to annex adjoining territory. It reaches out to bring additional territory within its jurisdiction and within its taxing power. But to accomplish this, the council must pass a preliminary resolution declaring such intention, describing the property, ordering the filing of a plat and requiring notice to be given by publication, posting in at least three public places in the district to be annexed, and mailing to all known freeholders in the district. After hearing and opportunity to protest, an order of annexation may be made only in the absence of protest by a majority of the freeholders in the district, or, under certain conditions, even in the face of such protest. Such second method was not followed by the city council and we are not called upon to analyze it other than to note its clear indication of the legislative intent when the first method is followed.

Opportunity to object to an enforced change in the nature of the municipal jurisdiction under which they will hereafter fall, has always been jealously guarded. "There are few, if any, acts of state bearing upon individuals" says Mr. McQuillin, Municipal Corporations, Vol. 1, p. 568, "more important than those which determine their liberty to be included in particular municipalities; and the cases are rare in which they have not been allowed an opportunity of being heard in every

step of the proceeding." In the present case property owners in the new district, possibly a majority of them, an actual majority under the allegations of the petition, have not yet had an opportunity to be heard. The order of the district court sustaining the city's motion to dismiss, if it should stand, would forever deprive them of that opportunity. And this, despite the fact that the board's determination could not be final and conclusive because the statute had failed to clothe the board with the power and machinery to find the facts. Kenney v. Bank of Miami, supra.

Behind the expressed reasoning in those cases in which the board's finding of the sufficiency of the initiatory petition was held not subject to judicial review after a majority vote in a duly held election, we constantly discern the question of *policy*. To accept the board's determination of sufficiency would in such case "seem more politic." State v. Self, supra. If, indeed, only 19 percent of the electors petitioned, instead of the 20 percent required in People v. Los Angeles, supra, and the required filing was not expressly made a condition precedent to vesting of jurisdiction, and if, at a duly conducted election, 99 percent of the electors voted for annexation, every consideration of policy would condemn an attempted annulment of the virtually unanimous will of the electors by an attack on the sufficiency of the initiatory petition which simply put in motion the election machinery. But contra where such elements exist as in the present case: (1) The statute did not expressly vest in the board the power or the duty to make an investigation of the fact. (2) Nothing indicates that it did make such investigation. (3) It is alleged (and presumed to be true under the motion to dismiss) that a majority did not sign the petition. (4) The filing of a majority petition was a condition precedent to the vesting of jurisdiction under the clear wording of the statute. (5) The petition itself—not an election put in motion by the petition—was the basis of the annexation ordinance.

The briefs and oral arguments include citation of numerous additional authorities and discussion of incidental matters. These have all been carefully considered, but a discussion of them could add nothing to the conclusions we have drawn. For the reasons stated, we are compelled to hold that the district court's dismissal of the second amended complaint was error.

The judgment is reversed and the case is remanded to the district court for further proceedings not inconsistent with the views herein expressed.

MERRILL, C. J., and EATHER, J., concur.