BETTY BEEBE, Petitioner, v. JOHN KOONTZ, Indi-
VIDUALLY, AND AS SECRETARY OF STATE OF THE
STATE OF NEVADA, ET AL., RESPONDENTS.

Nos. 3988 and 3992

October 18, 1956. 302 P.2d 486.

## No. 3992

BETTY BEEBE, Appellant, v. JOHN KOONTZ, Indi-
VIDUALLY, AND AS SECRETARY OF STATE OF THE
STATE OF NEVADA, ET AL., RESPONDENTS.

RICHARD HAM, Intervenor and Respondent.

*Zenoff, Magleby & Manzonie,* of Las Vegas, for Appel-
lant in No. 3992 and for Petitioner in No. 3988.

*Harvey Dickerson,* Attorney General, Carson City, for
Respondents.

*George Rudiak,* of Las Vegas, appearing as amicus
curiae in No. 3988 and as attorney for intervenor in No.
3992.

**OPINION**

*Per Curiam:*

Both of the above entitled matters involve the placing on the ballot at the general election on November 6, 1956, by the secretary of state of a referendum petition to determine whether or not that certain act of the legislature known as the sales tax law, being "An Act to provide revenue for the State of Nevada; providing for sales and use taxes" etc., approved March 29, 1955 (Stats. 1955, 762), should be approved by the people. The first proceeding, No. 3988, filed with the clerk of this court October 4, 1956, is a petition for writ of mandate commanding the secretary of state and the several county clerks to omit the said question from the ballots and commanding the secretary of state to correct the certification made by him on August 8, 1956, of the propositions to be voted on at said general election by notifying

each of the county clerks that such question must be omitted from the ballots used. The second proceeding, No. 3988, is an appeal from an order of the First Judicial District Court, in and for the County of Ormsby, denying the petition of the same plaintiff for an injunction restraining the same respondents from similar action. The petition in that case was filed October 8, 1956 in the district court, the denial of injunctive relief filed October 11, and notice of appeal filed in this court on the same day, together with the record on appeal and together with a stipulation that the two matters might be consolidated for hearing October 17, 1956.

Under both proceedings the main questions presented are (1) whether the petitions seeking a referendum of the sales tax law purporting to be signed by 10 percent of the "qualified electors" satisfy the requirements of Article XIX of the state constitution and of section 2531 et seq. N.C.L. 1929 requiring such petitions to be signed by 10 percent of the "voters"; and (2) whether the verification of each of the counterparts of the petition by an affiant who was not one of the signers and who certified, not that the signers were "voters," but that they were "qualified electors," was sufficient.

Briefs in support of the contentions of the respective parties were not filed with this court until October 17, 1956, a few minutes before the oral argument, and supplemental points and authorities were handed to the clerk for delivery to the court during the course of the argument.

Beebe, as petitioner herein and as appellant herein, contended that Caton v. Frank, 56 Nev. 56, 44 P.2d 521, 524, is controlling of the issues here submitted. That was an original proceeding in mandamus to compel the respondents to proceed upon a petition signed by a number of the "qualified electors" of the city of Reno to amend its charter. This court there said: "We are of the opinion that the legislature, in enacting section 1257 N.C.L. 1929, contemplated that the signers to the petition provided for therein, in addition to being a mere

elector as provided in the constitution, must have complied with the registration laws, and become a voter. Such was evidently the view taken by this court in the case of State ex rel. Boyle v. State Board of Examiners [21 Nev. 67, 24 P. 614, 9 L.R.A. 385], supra." It held the affidavit to the petition to be defective in that "it does not show that the person making the affidavit was himself a signer of the petition" and in that he certified that the signers were, not "qualified voters," but "electors"; that an elector would not be a qualified voter until he had registered as required by the registration laws.

Respondents contend that the holding in that case is greatly limited by the subsequent decision of this court in Gilbert v. Breithaupt, 60 Nev. 162, 104 P.2d 183, 128 A.L.R. 1111, in which the ouster of the appellant was sought because, while a qualified elector, he was not a qualified voter of the city of Las Vegas or of the county of Clark, and therefore allegedly not a qualified candidate for election. As in the Caton case, numerous authorities were discussed by the court and it was held that the Caton case did not control but that as a qualified elector he was eligible as a candidate for office.

The three sections of Article XIX of the constitution were discussed at length by all parties. The attorney general supported the decision of the district court in the injunction proceeding to the effect that injunction would not lie to interfere with the orderly processes of legislation, and in this respect distinguished Caine v. Robbins, 61 Nev. 416, 131 P.2d 516, upon which appellant relied. He and counsel for intervenor also argued at length that mandamus would not lie to compel the secretary of state to undo that which he had already done, citing a number of cases from this court and many from other jurisdictions. But see State ex rel. Haight v. Wilson, 40 Nev. 131, 161 P. 306, in which mandamus was held proper to compel the county clerk to *exclude* from the ballots the name of a candidate improperly nominated, and a number of other cases in support. As against this, respondents refer us to State v. Public

Service Commission, 44 Nev. 102, 190 P. 284, 285, in which this court said: "There has been no refusal on the part of the commission to perform any duty enjoined upon it. The writ is not sought to stimulate the commission to action pursuant to some legal duty, but rather to cause it to undo the result of action taken in a matter in which its jurisdiction has been invoked in conformity with the statute defining its powers over public utilities in this state. Mandamus is ordinarily a remedy for official inaction, and will not lie to undo what has been done." See also State v. Gracey, 11 Nev. 223.

The oral argument developed further disagreement among counsel as to the effect of the holdings of this and other courts and particularly as to the proper construction and interpretation of the constitutional and statutory provisions involved. With reference to the effect of the Caton case upon the issues presented, it must also be noted (1) that while the initiative and referendum provisions of Article XIX of the constitution were self-executing with reference to state matters, they were not self-executing with reference to county and municipal matters; State ex rel. Dotta v. Brodigan, 37 Nev. 37, 138 P.914; that, accordingly, the referendum in the Caton case, involving amendment of the city charter, might be considered, as to rules and methods of application, a creature of the statute rather than of the constitution, and therefore not necessarily controlling in construing the provisions of Article XIX; and (2) that in the Caton case the action sought by the petition was far more drastic, in that the petition itself, signd by 60 percent of the electors, was a species of election and actually effected the amendment without an election, while the petition in the instant case simply initiated election proceedings. We recognized such a distinction in State ex rel. Quimby v. City of Reno, 71 Nev. 144, 282 P.2d 1071.

Respondents further contended that the interpretation

of the constitution as made by petitioner and appellant leads to absurd results: that the record shows that in the various petitions circulated, there were provisions for only ten signers on each counterpart of the petition; that if the person verifying was required likewise to be a signer of the petition, his name would appear, for example, on a hundred petitions—yet ninety-nine of his said signatures would be duplications; that this would impose an impossible burden on the secretary of state to scrutinize every counterpart of the petition for the solution of such problem; that the county clerks, pursuant to the election laws, strike from the registration lists the names of all qualified electors who have not voted; that this is done immediately following each election and that voters are not required to reregister until shortly prior to the next ensuing election; that under petitioner's contention such voters not reregistering over a period of some two years would, during that interim, be foreclosed of the right of signing an initiative or referendum petition.

Respondents further examined the three sections of Article XIX line by line and called attention to the constant use of the term "electors" and "qualified electors," as well as the term "voter," in the three sections of the article.

In addition to the cases mentioned in this memorandum, the briefs cite many additional cases from this and other states.

This is the third successive general election with respect to which this court has entertained last-minute litigation regarding matters sought to be presented for the vote of the people. We feel that this is the proper occasion for a statement of the limits beyond which this court will not go in its accommodation of such litigants.

Where resort to this court is had to prevent an issue from being presented for popular election and when such resort is tardily had without showing of good cause

for such lateness and when, due to such tardiness and the nature of the issues of law presented, orderly appellate consideration cannot be had without disruption of the process of election, this court will refuse determination of those issues on the merits. .°

In the instant cases no explanation has been given to this court for the delay in seeking our determination upon the issues involved. One year has elapsed since the referendum petition was filed with the secretary of state. The issues should then have become apparent.

Due to the lateness in filing, unless a decision be handed down by this court forthwith, the election process will be disrupted. We can take note of the fact that the time has already passed when the clerks of some of our counties ordinarily set in motion the machinery for the printing of ballots. Further delay will seriously prejudice the rights of absentee voters to participate in the election. In Brown v. Georgetta, 70 Nev. 500, 275 P. 2d 376, we had occasion to comment upon the nature of those rights. They were not permitted to prejudice the rights of the general electorate to express its election upon a proper issue. The rights of absentee voters, however, are of sufficient substance to warrant our refusal to sanction their destruction by the delays inherent in orderly judicial procedure where such destruction would have been avoided by timely action on the part of the petitioner.

The legal issues presented in these matters cannot be decided forthwith upon their merits. If such decision is to stand as law a careful consideration must be had of the many issues already mentioned.

We can, then, foresee that in the course of orderly appellate consideration the judicial process itself may well render these issues of law moot prior to the announcement of our decision.

Under these circumstances for this court to entertain this litigation further would amount to an unwarranted

interference by the judicial department with the electoral franchise of the people of this state. Such interference, so far as the ensuing election is concerned, might well amount to a substantial destruction of that most important civil right.

Accordingly we hold that, regardless of the merits of the contentions of petitioner-appellant, delay in presenting the matter to the courts of this state has in practical necessity lost her the right of judicial determination by this court.

In Case Number 3988 writ denied.

In Case Number 3992 judgment affirmed.