FRANCIS C. REA, Jr., KEITH HENRIKSON, WILLIAM F. DAVIS, JAMES R. NEIL, ROBERT CAVAKIS, AND LESLIE McGINNIS, APPELLANTS, *v.* THE MAYOR, CITY MANAGER, AND CITY COUNCIL, AS THE GOVERNING BODY OF THE CITY OF RENO, NEVADA, AND BUD BAKER, KENNETH BROWN, GEORGE CARR, JOHN MARSHALL, JOSEPH MASTROIANNI, DICK DIMOND, AND CHARLES COWEN, CONSTITUTING THE MEMBERS OF SAID GOVERNING BODY, RESPONDENTS.

No. 4382

December 16, 1960                    357 P.2d 585

(Petition for rehearing denied January 17, 1961.)

*Roger Bissett,* of Reno, for Appellants.

*Roy Lee Torvinen,* City Attorney, of Reno, for Respondents.

## OPINION

By the Court, McNAMEE, C. J.:

The sole question necessary for decision in this appeal is whether paragraph b, subsection 1, NRS 268.010, violates Art. 19, sec. 3, of the Nevada Constitution.

Art. 19, sec. 3, of the Nevada Constitution provides for the initiative and reads in part as follows: "The people reserve to themselves the power to propose laws * * * and to enact or reject the same at the polls, independent of the legislature. * * * The initiative and referendum powers in this article provided for are further reserved to the qualified electors of each county and municipality as to all local, special and municipal legislation of every character in or for said respective counties or municipalities. The legislature may provide by law for the manner of exercising the initiative and

referendum powers as to county and municipal legislation, but shall not require a petition of more than 10 per cent (10%) of the qualified electors to order the referendum, nor more than 15 per cent (15%) to propose any municipal measure by initiative."

Although the provisions of said sec. 3 are self-executing with reference to state matters, they are not self-executing with reference to county and municipal matters. Beebe v. Koontz, 72 Nev. 247, 302 P.2d 486.

Paragraph b, sec. 1, NRS 268.010, is an attempt by the legislature to exercise the constitutional power given it by said sec. 3 to provide for the manner of exercising the initiative and referendum powers with respect to county and municipal legislation. Said paragraph b reads as follows:

"Upon the filing of a verified petition bearing the signatures of not less than 60 percent of the registered voters of the city or town, as certified by the clerk of the county wherein the city or town is located, praying for the adoption of any amendment or amendments fully set forth in such petition, and exhibited to each of such signers prior to the signature being affixed thereto. The signatures need not all be appended to one paper, but each signer shall add to his signature his place of residence. One of the signers of each such petition shall swear that the statements therein made are true to the best of his knowledge and belief.

"Upon the filing of any such petition bearing the required number of signatures, duly verified and setting out therein the amendment or amendments proposed, the governing body of such city or town shall adopt such amendment or amendments by resolution without further proceeding."

Pursuant to said paragraph b, a verified petition containing in excess of 60 percent of the required signatures praying for the adoption of certain amendments to the charter of the City of Reno was filed with the city clerk of the City of Reno. Thereafter respondents refused to adopt the said amendments. Action was commenced in

the court below for a writ of mandamus to compel the adoption of said amendments. Upon the lower court's dismissal of the petition for mandamus this appeal was taken. In our opinion, the legislature in enacting NRS 268.010 went beyond the said powers granted to it by the constitution, because it failed to provide therein for the submission of proposed charter amendments to the decision of the voters at the polls.

The initiative power provided for by the constitution as aforesaid is reserved to the qualified electors of each municipality. That power is expressly defined as "the power to propose laws  *  *  *  and to enact or reject the same at the polls, independent of the legislature." It is clear to us from the definition of the power reserved as quoted above that the constitution does not contemplate the initiative without a ballot. In other words, the initiative power given to the electors of a municipality with respect to municipal legislation is no different from the initiative power given to the people as a whole with respect to state matters. This power consists of the power to *propose* laws which thereafter must be enacted or rejected at the polls as distinguished from a power which would effect a legislative act without an election. This conclusion results not only from our constitutional provisions but also from the definitions of "initiative" found in reputable publications. Black's Law Dictionary defines "initiative" as "the power of the people to propose bills and laws and to enact or reject them at the polls, independent of the legislative assembly." The same definition is found in 82 C.J.S., Statutes, sec. 115. In 1 Bouvier's Law Dictionary, Rawle's Third Revision, p. 1569 "initiative" "is the right of a specified number of the electorate to unite in proposing laws to the legislative body, which, after due consideration must submit the same to the vote of the people for their approval or disapproval."

Appellants contend that Caton v. Frank, 56 Nev. 56, 44 P.2d 521, is controlling of the issues here submitted. In that case a statute similar to said paragraph b

received the attention of this court in a case where a writ of mandamus was sought to compel the governing body of the City of Reno to act upon a petition to amend the city charter. It was asserted that subdivision 2 of section 1257, NCL 1929 (now paragraph b, subsection 1, NRS 268.010) was unconstitutional in that it was in conflict with section 8 of article 8 of the Constitution of the State of Nevada[1] in permitting an amendment of a city charter by the filing of a petition signed only by a percentage of qualified voters,[2] because said section 8 of article 8 contemplates the amendment of a city charter only by an election held for that purpose at which all of the electors are permitted to express their choice by vote. This court did not agree with said contention but held "that the legislature may under the powers granted by the said section 8 of article 8, provide any reasonable and uniform method whereby the qualified voters of a city may, by a majority, express a desire to amend such charter, as by a proper petition signed by sixty percent of the qualified voters, as is provided by said subdivision 2 of said section 1257, NCL 1929, which we hold, is not in conflict with said provision of the constitution." The writ was denied however because this court concluded that petitioners had failed to bring themselves within the terms of said subdivision 2. Although it was argued by respondents[3] that said subdivision 2 was in violation of Art. 19, sec. 3, of the Nevada Constitution, the concluding paragraph of the opinion reveals that the court felt it unnecessary to

[1]Art. 8, sec. 8: *"Municipal corporations formed under general laws.* The legislature shall provide for the organization of cities and towns by general laws and shall restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, except for procuring supplies of water; *provided, however,* that the legislature may, by general laws, in the manner and to the extent therein provided, permit and authorize the electors of any city or town to frame, adopt and amend a charter for its own government, or to amend any existing charter of such city or town."

[2]Subdivision 2 of section 1257, NCL 1929, contains the words "qualified voters" while said paragraph b contains the words "registered voters."

[3]This argument of respondents appears only in the official report of Caton v. Frank found in 56 Nev. 56, 59.

decide the point. We therefore conclude that the Caton case is not controlling of the issues here submitted.

In the Caton case the court said that in view of the fact that the petition was insufficient to justify the issuance of the writ as prayed for it would be unnecessary to decide the other points raised. For the same reason it was unnecessary for the court to decide whether the statute was unconstitutional under Art. 8, sec. 8. However, Art. 8, sec. 8, in our opinion is not inconsistent with Art. 19, sec. 3. Even if it were, Art. 19, sec. 3, with a later date of adoption is controlling. Farrar v. Board of Trustees, 150 Tex. 572, 243 S.W.2d 688; Pressley v. Industrial Commission, 73 Ariz. 22, 236 P.2d 1011; Opinion to the Governor, 78 R.I. 144, 80 A.2d 165.

The respondents acted properly in failing to adopt by resolution the legislation contained in the petition, because we have concluded that such action would constitute a procedure violative of Art. 19, sec. 3, of our constitution. The lower court, therefore, properly dismissed the petition for writ of mandamus.

Affirmed.

PIKE, J., concurs.

BADT, J., dissenting:

I dissent.

It is my opinion that the presumption of constitutionality has not been overcome. Of the many cases approving such presumption, no case in this state seems to have expressed it more strongly than Hess v. Pegg, 7 Nev. 23 (5–6–7 Nev. 715, 721). This court there said:

"For this court to oppose its judgment to that of the legislature, excepting in a case admitting of no reasonable doubt, would not only be contrary to all well considered precedent, but would be an usurpation of legislative functions. It cannot be denied that the tendency in some states of this union is that way, undoubtedly from good motives; but the sooner the people learn that every act of the legislature not found to be in 'clear, palpable and direct conflict with the written constitution,' must be sustained by the courts, the sooner they

will apply the proper correction to unjust or impolitic legislation, if such there be, in the more careful selection of the members of that branch of the state government to which they have delegated and in which they have vested the 'legislative authority' of this state. No court should, and this court will not, step out of the proper sphere to undo a legislative act; and therein, no court should, and this court will not, declare any statute void because unconstitutional, without clear warrant therefor."

It seems to me that sec. 8 of Art. 8 of the constitution considered in Caton v. Frank, 56 Nev. 56, 44 P.2d 521, 522, just as clearly contemplates an election as does sec. 3 of Art. 19. At least it connoted that much to this court, for it referred to the contention that the initiative petition there involved was limited by the constitution to a *"vote"* of *"the electors"* *"cast at an election"* and held that the legislature could provide any reasonable and uniform method whereby the qualified *"voters"* expressed their desire.

I see no escape from the fact, then, that this court held in Caton v. Frank that sec. 8 of Art. 8 required an *election;* that in such election the *electors,* or *voters,* would *vote.* This being so, the language there used is just as effective as that used in sec. 3 of Art. 19 in which the people reserved to themselves the power to propose laws and to enact or reject the same *at the polls.*

Section 3 of Art. 19 then provides: "The legislature may provide by law for the manner of exercising the initiative and referendum powers as to county and municipal legislation, * * *." It was pursuant to that constitutional provision that the legislature enacted NRS 268.010, under which the electors could themselves amend their charter by filing a 60 percent initiative petition. This was held in Caton v. Frank to have provided a reasonable and uniform method "whereby the qualified voters of a city may, by a majority, express a desire to amend such charter" and which was held to be not in conflict with sec. 8 of Art. 8.

I see no valid reason for overruling that decision. I agree with that holding that the machinery of a 60

percent petition provided a reasonable and uniform method under which 60 percent of the voters express their will. We said in Beebe v. Koontz, 72 Nev. 247, 302 P.2d 486, 489: "* * * in the Caton case the action sought by the petition was far more drastic, in that the petition itself, signed by 60 percent of the electors, was a species of election and actually effected the amendment without an election, while the petition in the instant case simply initiated election proceedings. We recognized such a distinction in State ex rel. Quimby v. City of Reno, 71 Nev. 144, 282 P.2d 1071." If that was dictum in Beebe v. Koontz, I would declare it here to be the law—our approval of the direct pronouncement of the legislature.

In the Quimby case just mentioned, involving annexation of property to the city, we referred to action by the city council, "where the action of the board does not simply initiate election proceedings but in itself is a species of election which effectuates the annexation." Reference was made to decisions from other jurisdictions which used similar expressions.

The majority of the court appears to feel that, although in Caton v. Frank this court held that sec. 8 of Art. 8 of the constitution was not violated by a statute permitting the amendment of the city charter "by the filing of a petition signed by only a percentage of the qualified voters," the court there felt that it was unnecessary to decide the point and that the holding is therefore not controlling in the instant case. With all respect, I am unable to agree with this conclusion. Caton v. Frank was an original proceeding in mandamus in this court to compel the mayor and city council of Reno to proceed upon a petition signed by a number of the qualified voters of Reno to amend the charter. This court recited that the petition first presented the question as to the constitutionality of the statute requiring such amendment upon the filing of a 60 percent petition. As we have above noted, it disposed of this question by deciding that the statute did not violate sec. 8 of Art. 8 of the constitution. It then proceeded to the second point, namely, whether the petition

had been signed by 60 percent of the qualified electors. It decided that it had not been so executed and denied the writ. Then at the end of the opinion the court stated, as noted in the main opinion: "There are other questions raised by respondents' demurrer, but, we feel, in view of the conclusion here reached, namely, that the petition is insufficient to justify the issuance of the writ as prayed for, it would be unnecessary to decide the other points raised." It did, however, definitely pass upon the constitutional question.

I am compelled to conclude that the majority places too much emphasis on those words contained in sec. 3 of Art. 19 under which the people reserve to themselves the power *"to propose laws * * * and to enact or reject* the same *at the polls,* independent of the legislature, * * *."* The words italicized are in my opinion merely descriptive of the exercise of independent choice, and the emphasis should be placed upon the reservation of the right of initiative and referendum *to the people* and to reserve it to them *independent of the legislature.* When the constitution itself provided that the legislature should provide the manner of exercising the initiative and referendum powers and the legislature in its wisdom felt that it would be a waste of time and expense to require an election at the polls when a majority of the voters had already expressed their view in writing, I cannot conclude that this was in "clear, palpable and direct conflict with the written constitution," justifying the decision of this court that it is necessary "to undo [the] legislative act." At least I cannot so conclude in the face of complete absence of authority to support such action. I would reverse the judgment of the district court.

BADT, J.