MAE E. CAINE, as County Clerk of the County of Elko, State of Nevada, Appellant, *v.* JOHN E. ROBBINS, Individually and as a Resident, Citizen, Taxpayer, and Elector of the State of Nevada and of the County of Elko in Said State and on Behalf of All Persons Similarly Situated, Respondent.

No. 3381

November 30, 1942. 131 P.(2d) 516.

*C. B. Tapscott,* District Attorney, of Elko, *Gray Mash-burn,* Attorney-General, and *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, for Appellant.

*Milton B. Badt* and *John E. Robbins,* both of Elko, for Respondent.

## OPINION

By the Court, DUCKER, C. J.:

This suit was instituted by respondent on September 17, 1942, to enjoin the county clerk of Elko County, Nevada, from proceeding with any of the statutory steps looking toward the submission to the electors of said Elko County at the next general election to be held on November 3, 1942, a certain initiative petition measure

entitled: "An Act relating to and providing for the protection, propogation, restoration, domestication, introduction, purchase, and disposition of wild animals, wild birds and fish; creating certain offices, providing the method of selecting the officers therefor, defining the powers and duties of certain officers and other persons; defining certain terms; providing for the licensing of and regulating of hunting, trapping, game farming and game fishing; providing for a license for fur dealers; authorizing the establishment, control and regulation of private fish hatcheries, state recreation grounds, sanctuaries and refuges, and the closing, opening and shortening of hunting and fishing seasons; regulating the transportation and possession of wild animals, wild birds and game fish; providing for the acquisition of property for certain purposes; providing for instruction in the game laws of this state in the public schools of this state; establishing certain funds and regulating expenditures therefrom, providing penalties for violation thereof and other matters properly relating thereto."

The case is here on appeal by said clerk from a judgment and decision perpetually enjoining her from proceeding in any manner toward submitting the proposed measure to the electorate of said Elko County at the next general election or any subsequent election to be voted upon as to its adoption or rejection. The parties stipulated in the court below that the decision filed was the final judgment.

It appears from the allegations of the complaint that the initiative petition was filed with the secretary of state and by him presented to the legislature at its 1941 session but was not enacted by the legislature or passed upon by either the assembly or senate, and was returned by the legislature to the secretary of state, who caused the same to be certified to each county clerk of the state, including defendant, appellant here. In this connection it is alleged that said county clerks would be required

to post three copies thereof in each of such counties, and cause the same to be published three times in each of such counties under penalty of fine and imprisonment, if any of such county clerks should fail to do so; and by reason thereof each county clerk would be required to provide printed ballots and to print therein the question as to whether the purported initiative petition should be voted for or against, with a brief statement of the purport of such question in plain ordinary language which might be readily understood by the ordinary lay person. On information and belief it is alleged that the cost of such posting, printing, and publication within the county of Elko would be in excess of $2,000.

It is alleged, inter alia, that the said initiative petition is null and void and of no effect and is inoperative for any purpose whatsoever in that it contains no enacting clause as required by section 3 of article XIX of the state constitution, and as required by section 2579 N. C. L. 1929. It is further alleged that plaintiff, respondent here, and all persons similarly situated will suffer great and irreparable damage and injury unless said clerk is enjoined from proceeding with said steps and that plaintiff has no plain or speedy or adequate remedy at law, and no remedy save to invoke the equitable power of the court.

Appellant demurred to the complaint on the grounds (1) that it did not state facts sufficient to constitute a cause of action, and (2) that the court had no jurisdiction of the subject of the action. An answer was also filed. The court, in its judgment and decision, overruled the demurrer on both grounds. On the trial of the case it was stipulated that the original initiative petition on question No. 2 to be voted on at the general election on November 3, 1942, wherein it is requested that a proposed law thereto attached and providing for centralized fish and game control in the State of Nevada, be adopted, shows on its face and in the contents thereof, that no enacting clause of any form or wording precedes,

or anywhere appears in said petition, and that the first paragraph thereof reads as follows: "We, the undersigned qualified electors of the State of Nevada, by virtue of and in accordance with Section 3 of Article 19 of the Constitution of the State of Nevada hereby propose by initiative petition the following measure, law or act; and we petition that it be by you transmitted to the Legislature at its next regular session, and if it be not enacted by said Legislature and approved by the Governor, that you submit it to the qualified electors for approval or rejection at the next ensuing general election."

On the hearing of the appeal in this court it was stipulated by attorneys for the parties that when the court had reached its conclusion, an order could be made in advance of a written opinion. Accordingly, on September 28, 1942, the court made and entered the following order: "It is ordered that the judgment of the court appealed from be and the same is hereby affirmed. Our reasons for the order follow."

■ The initiative measure proposed by the petition would, if enacted by the vote of the electors, be clearly unconstitutional for lack of enacting clause required by the state constitution in initiative proceedings. The negative of this proposition was very reluctantly and consequently feebly expoused by counsel for appellant, their principal objection to the judgment being levelled at the jurisdiction of the court. Section 3 of article XIX of the state constitution provides: "The enacting clause of all bills proposed by the initiative shall be: 'The people of the State of Nevada do enact as follows.'"

Pursuant to this constitutional mandate the legislature of 1921 enacted it in the same language. Section 2579 N. C. L.

■ It is quite generally held that a provision in a state constitution requiring an enacting clause in a statute is mandatory and that the omission thereof renders the statute void. Commonwealth v. Illinois Central R.

Co., 160 Ky. 745, 170 S. W. 171, L. R. A. 1915B, 1060, Ann. Cas. 1916A, 515; see the cases cited in support of this view in note on pages 520, 521, of latter citation 59 C. J. sec. 149, p. 597, and additional cases in note 55. The reasons for this generally accepted rule are pointedly stated by Judge Cooley. He says: "It is a necessary attribute of sovereignty that the expressed will of the sovereign is law; and while we may question and cross-question the words employed, to make certain of the real meaning, and may hesitate and doubt concerning it, yet, when the intent is made out, it must govern, and it is idle to talk of forms that should have surrounded the expression, but do not. But when the legislative power of a state is to be exercised by a department composed of two branches, or, as in most of the American states, of three branches, and these branches have their several duties marked out and prescribed by the law to which they owe their origin, and which provides for the exercise of their powers in certain modes and under certain forms, there are other questions to arise than those of the mere intent of the lawmakers, and sometimes forms become of the last importance. For in such cases not only is it important that the will of the lawmakers be clearly expressed, but it is also essential that it be expressed in due form of law; since nothing becomes law simply and solely because men who possess the legislative power will that it shall be, unless they express their determination to that effect, in the mode pointed out by the instrument which invests them with the power, and under all the forms which that instrument has rendered essential." Cooley's Constitutional Limitations (6th ed.), 155.

A declaration of the enacting authority in laws is a usage and custom of great antiquity and is required in some form or other in the constitutions of most of the states, and the compulsory observance of it is founded in sound reason. Sjoberg v. Security Savings & Loan Association, 73 Minn. 203, 75 N. W. 1116, 72 Am. St. Rep. 616.

██ But the question is not res integra in this jurisdiction. In State of Nevada v. Rogers, 10 Nev. 250, 21 Am. Rep. 738, it was held that the enacting clause of every law, "The People of the State of Nevada, represented in Senate and Assembly, do enact as follows" is mandatory, and that the omission of the words "Senate and" from the act of the legislature before it, rendered the act unconstitutional. The court gave some very sound reasons for its ruling, all of which meet with our approval. The court did not deem it necessary to hold that the enacting clause required by the constitution must follow it literally, as there had not been a substantial compliance with the provisions of the constitution. This principle of constitutional law so applicable to acts of the legislature under our constitution applies with equal force to proposed initiative measures. In affirming the judgment we were of the opinion that the initiative petition before us was plainly and palpably unconstitutional and void. Notwithstanding, the appellant clerk insists that the lower court was without jurisdiction to enjoin her official action. Her counsel concedes that there are two lines of authority on the question, but maintain that the better reasoned cases support their view. There is indeed a conflict of authority, but it is said by modern text-writers that the majority view favors jurisdiction. Under the title, "Initiative, Referendum and Recall," in 28 Am. Jur. on pages 172 and 173, it is said: "It seems, however, to be the majority view that the submission to the voters of an amendment to a state constitution may be enjoined when the proposed amendment, if adopted, would clearly and palpably violate a provision of the paramount Federal Constitution; and the submission of a statute to the voters may be enjoined where the statute, if adopted, would clearly contravene provisions of either the Federal or state Constitution."

██ The same statement is reiterated in 94 A. L. R. 812. However, be the weight of authority as it may, we were impelled to endorse the latter view taken in the

following cases: Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann. Cas. 1914B, 916; Gray v. Winthrop, 115 Fla. 721, 156 So. 270, 94 A. L. R. 804; State v. Hall, 35 N. D. 34, 159 N. W. 281; Ellingham v. Dye, 178 Ind. 336, 99 N. E. 1, Ann. Cas. 1915C, 200; Livermore v. Waite, 102 Cal. 113, 36 P. 424, 25 L. R. A. 312; Mathews v. Turner, 210 Iowa 424, 426, 236 N. W. 412.

In Crawford v. Gilchrist, supra, the suit was brought by the governor of the State of Florida in his official capacity, and also as a resident, taxpayer, citizen, and elector, against the secretary of state to stay him from publishing in several newspapers of the state certain proposed amendments to the state constitution as a prerequisite to the submission of the same to the voters for approval or rejection at the general election. The right to an injunction was upheld. In the course of the opinion the court said [64 Fla. 41, 59 So. 966, Ann. Cas. 1914B, 916]: "Therefore the public welfare demands that the questions here raised as to the validity of the proposal of such amendments should be determined as speedily as the law will permit so as to avoid unnecessary expense, confusion, and litigation in governmental matters that vitally affect all the people of the state. It is the duty of the courts to facilitate and not to retard the determination of litigated causes."

It was further said: "The act of the Secretary of State in publishing at public expense and in certifying to the county commissioners proposed amendments of the Constitution is in its nature ministerial, involving the exercise of no discretion, and, if the act is illegal, it may be enjoined in appropriate proceedings by proper parties; there being no other adequate remedy afforded by law. * * * This is not an interference by the courts with the legislative department of the government."

That it is such an interference is the ground upon which some courts hold that they are without jurisdiction to enjoin acts looking to the submission to the electorate of proposed constitutional amendments or

measures proposed by initiative petition. This contention is very satisfactorily answered in State v. Hall, supra, in which proceedings by the secretary of state in the submission to vote of a proposed constitutional amendment, were enjoined.

"This contention," the court said, "is premised upon the erroneous basic assumption that the enacting of a constitutional amendment is an exercise of a legislative power confided as legislative subject-matter upon the legislative department of government, as is ordinary legislation. While in a sense such may be a political or legislative matter for determination as a political question (Red River V. Brick Co. v. Grand Forks, 27 N. D. 8–27, 145 N. W. 725), yet in its submission for adoption or rejection neither legislative province nor power is involved. Whether the people by initiative petition or by legislative proposal amend the fundamental law they are in either instance," said the court, quoting from Livermore v. Waite, 102 Cal. 113, 118, 36 P. 424, 25 L. R. A. 312, " 'merely acting under a limited power conferred * * * by the people, and which might with equal propriety have been conferred upon either house, or upon the Governor, or upon a special commission, or any other body or tribunal. The extent of this power is limited to the object for which it is given, and is measured by the terms (of the Constitution) in which it has been conferred, and cannot be extended by the Legislature to any other object, or enlarged beyond these terms.' " [35 N. D. 34, 159 N. W. 282.]

In the case of Livermore v. Waite, the secretary of State of California was enjoined from certifying a proposed constitutional amendment to the clerks of the counties, and from taking other steps to submit it to the people, which would cause the unnecessary expenditure of public money, because the legislature had not strictly complied with the constitution. The injunction was upheld by the supreme court.

In the case of Gray v. Winthrop, 115 Fla. 721, 156 So.

270, 272, 94 A. L. R. 804, the court had enjoined the secretary of state from publishing and furnishing copies for use in submitting to the voters for adoption or rejection a proposed amendment to the state constitution. The judgment was reversed by the supreme court on the ground that the amendment did not appear to be wholly void on its face. But the court recognized the power of courts to enjoin the submission of such to the voters in a proper case, in the following language: "If a proposed amendment to the state Constitution by its terms specifically and necessarily violates a command or limitation of the Federal Constitution, a ministerial duty of an administrative officer, that is a part of the prescribed legal procedure for submitting such proposed amendment to the electorate of the state for adoption or rejection, may be enjoined at the suit of proper parties in order to avoid the expense of submission, when the amendment, if adopted, would palpably violate the paramount law and would inevitably be futile and nugatory and incapable of being made operative under any conditions or circumstances."

The initiative for direct legislation by the people rests on no different principles than those involved in the submission of a proposed constitutional amendment to the people. This was practically recognized by this court in the case of State v. Reno City Council, 36 Nev. 334, 136 P. 110, 111, 50 L. R. A. (N. S.) 195. In that case the court had before it the question of whether a writ of mandate should issue to compel the city council of the city of Reno to submit a certain proposed ordinance to a vote of the electors of the city. The court held that the proposed ordinance was void and that the mandamus would not lie to compel its submission to a vote of the electors. As to the contention that a writ of mandate would not issue in such a case, the court said: "The proposition that a writ of mandate will not issue to compel respondents to submit to the electors of the city a proposed ordinance that would be void even

if approved by a majority of the electors is too clear for discussion or the citation of authorities."

If the legal remedy of mandamus will not lie to compel action in such a case, why is not the equitable remedy of injunction available to prevent action when a void measure involving irreparable injury is proposed to be submitted to a vote of the electors? No good reason for a distinction is discernible. State v. Reno City Council is cited in State v. Hall, supra, 159 N. W. at page 283, in support of the reasoning of the court that enjoining a ministerial officer from taking steps to submit to a vote of the people a proposed constitutional amendment that is illegal, is not an interference by the courts with the legislative department of the state.

■ Section 3 of article XIX of the state constitution provides that "not more than ten percent (10%) of the qualified electors shall be required to propose any measure by initiative petition." It should not be presumed that it was intended that these electors were empowered to set in motion the legal machinery for the enactment by the people of a measure wholly void under the constitution, with its consequent injury to the taxpayers. Holding that they are without such power is giving effect to the constitution.

The same position is taken in Livermore v. Waite, supra, in regard to a proposed constitutional amendment, when the court said: "The legislature was not authorized by the framers of the constitution, nor do the terms of that instrument permit it, to propose any amendment that will not, upon its adoption by the people, become an effective part of the constitution." [102 Cal. 113, 36 P. 427, 25 L. R. A. 312.]

■ The contention that a proceeding of this character presents a moot question is without merit. If the electors who signed the initiative petition were without power to invoke a vote upon it by the people because it was wholly void, as we believed they were, and a proper party has sought relief, as here, a case was presented

for the intervention of equity to prevent irreparable injury. State v. Hall, supra; Ellingham v. Dye, supra. To deny the jurisdiction of courts in a case of this character, where a plain, palpable violation of the constitution is threatened, would be to concede that irreparable injury, obvious and undisputed, was beyond the restraint of the remedial arm of equity.

Accordingly we affirmed the judgment.