ORVILLE R. WILSON, WM. C. GOODMAN, TOY R. GREGORY, JR., WALTER POLKINGHORNE, FRED H. DRESSLER, PETER T. KELLY, BERT ACREE, T. M. KEAN, WAYNE JEPPSON AND CLYDE GUNMOW, PETITIONERS, *v.* JOHN KOONTZ, AS SECRETARY OF STATE OF THE STATE OF NEVADA, RESPONDENT.

No. 4268

January 14, 1960                    348 P.2d 231

*Gray and Horton,* of Reno, for Petitioners.

*Roger D. Foley,* Attorney General, State of Nevada, for Respondent.

## OPINION

By the Court, McNamee, C. J.:

This is an original proceeding in mandamus brought by petitioners as residents and qualified electors of Nevada seeking an order from this court requiring respondent as Secretary of State to file their petition hereinafter described.

Petitioners seek to amend Article 4, section 2, of the Constitution of the State of Nevada so that it will provide for biennial rather than annual sessions of the legislature. They attempt to do so by an initiative petition under the provisions of Article 19, section 3, of said constitution (as amended in 1958). The respondent refused to file the petition basing his refusal on the grounds (1) that the 1958 amendment of Article 19, section 3, is invalid and, in any event, is self-executing with respect to proposed legislation only but not as to proposed constitutional amendments, and (2) that even if self-executing the ambiguity of section 3 created by the 1958 amendment thereof makes it impossible to determine whether the petition as presented for filing contains the required number of signatures.

Section 3 was added to Article 19 in 1912 by approval

of the voters after having been passed by the two preceding legislatures. See Stats. of Nev. 1909, p. 347, and 1911, p. 446. It was then worded as follows, the brackets indicating the portions thereafter deleted as hereinafter explained:

"Section 3. The people reserve to themselves the power to propose laws and the power to propose amendments to the constitution and to enact or reject the same at the polls, independent of the legislature, and also reserve the power at their option to approve or reject at the polls, in the manner herein provided, any act, item, section or part of any act or measure passed by the legislature, and section one of article four of the constitution shall hereafter be considered accordingly. The first power reserved by the people is the initiative, [and not more than ten per cent (10%) of the qualified electors shall be required to propose any measure by initiative petition, and] every such petition shall include the full text of the measure so proposed. Initiative petitions, for all but municipal legislation, shall be filed with the secretary of state not less than thirty (30) days before any regular session of the legislature; the secretary of state shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all measures of the legislature except appropriation bills, and shall be enacted or rejected by the legislature, without change or amendment, within forty (40) days. If any such initiative measure so proposed by petition as aforesaid, shall be enacted by the legislature and approved by the governor in the same manner as other laws are enacted, same shall become a law, but shall be subject to referendum petition as provided in sections one and two of this article. If said initiative measure be rejected by the legislature, or if no action be taken thereon within said forty (40) days, the secretary of state shall submit the same to the qualified electors for approval or rejection at the next ensuing general election; and if a majority of the qualified electors voting thereon shall approve of such measure it shall become a law and take effect from

the date of the official declaration of the vote; an initiative measure so approved by the qualified electors shall not be annulled, set aside or repealed by the legislature within three (3) years from the date said act takes effect. In case the legislature shall reject such initiative measure, said body may, with the approval of the governor, propose a different measure on the same subject, in which event both measures shall be submitted by the secretary of state to the qualified electors for approval or rejection at the next ensuing general election. The enacting clause of all bills proposed by the initiative shall be: 'The people of the State of Nevada do enact as follows.' [The whole number of votes cast for justice of the supreme court at the general election last preceding the filing of any initiative petition shall be the basis on which the number of qualified electors required to sign such petition shall be counted.] The second power reserved by the people is the referendum, which shall be exercised in the manner provided in sections one and two of this article. The initiative and referendum powers in this article provided for are further reserved to the qualified electors of each county and municipality as to all local, special, and municipal legislation of every character in or for said respective counties or municipalities. The legislature may provide by law for the manner of exercising the initiative and referendum powers as to county and municipal legislation, but shall not require a petition of more than 10 per cent (10%) of the qualified electors to order the referendum, nor more than 15 per cent (15%) to propose any municipal measure by initiative. If the conflicting measures submitted to the people at the next ensuing general election shall both be approved by a majority of the votes severally cast for and against each of said measures, the measure receiving the highest number of affirmative votes shall thereupon become a law as to all conflicting provisions. The provision of this section shall be self-executing, but legislation may be especially enacted to facilitate its operation."

This 1912 amendment to Article 19 for the first time provided for the initiative whereby the people were

empowered to propose amendments to the constitution and to enact or reject the same at the polls independent of the legislature, and similarly were empowered to propose laws.

In 1958 said section 3 was amended through an initiative petition which was approved and ratified by the people at the general election of 1958. In other words the 1958 amendment of said section 3 was effected by the very provisions of said section 3.

By said 1958 amendment those parts of section 3 shown above in brackets were deleted and the following provisions were substituted therefor:

"The initiative petition shall be proposed by not less than ten per cent (10%) of the qualified electors of each of not less than seventy-five per cent (75%) of the counties in the state, provided, however, that the total number of qualified electors proposing the said petition shall be not less than ten per cent (10%) of all of the qualified electors of the State.

"Each signer shall affix thereto his or her signature, place of residence and the county within which he or she is a qualified elector. Each document comprising the initiative petition filed with the Secretary of State shall have affixed thereto, an affidavit made by one of the signers to each of said documents or to the petition to the effect that all of the signatures are genuine and that each and every individual who signed his or her name thereto was at the time that he or she signed the petition a bonafide qualified elector of the respective county and the State of Nevada, said affidavit to be executed before a notary public or some officer authorized to administer an oath who possesses a seal.

"The total number of votes cast at the general election last preceding the filing of any initiative petition shall be the basis on which the number of qualified electors required to sign such petition shall be counted."

The purpose of the 1958 amendment, which affected procedure only, was to require for initiative petitions more signatures from a diversified area of the state,

and also to specify a particular type of verification. Respondent concedes that on the fundamental question of whether the constitution can be amended by initiative petition under Article 19, section 3, the original section 3 and section 3 as amended in 1958 do not differ.

1. We have reached the conclusion that section 3, ever since its original enactment, has been self-executing as to constitutional amendments. Not only does the last sentence thereof so provide ("The provision of this section shall be self-executing * * *."), but the procedure expressly relates to *all* initiative petitions other than those pertaining to municipal legislation. It is specific in the requirements necessary to effectuate the change or changes desired. The section provides the number of signatures required on any petition, who may sign the petition, what the petition shall contain, where and when the petition must be filed, and the detailed disposition of the same after its filing. If any election must follow because of the legislature's rejection or nonaction thereon, or because of the referendum, the procedure therefor is fully covered by general law. Respondent in neither his brief nor his oral argument has suggested any additional procedure that would necessitate further legislative action. The intention of the people and the legislature in adding section 3 to the constitution was in part to provide an alternate and shorter method of amending the constitution, and to reserve to the people the "power to propose amendments to the constitution and to enact or reject the same at the polls, independent of the legislature." The wisdom of making it a part of the organic law is no concern of the courts.

Under a similar constitutional provision the Supreme Court of Oregon in Stevens v. Benson, 50 Ore. 269, 91 P. 577, 588, had no difficulty in construing it to be self-executing. Although the case there involved a proposed law rather than a proposed constitutional amendment, the following language therefrom would be applicable to both:

"A constitutional provision is said to be self-executing if it enacts a sufficient rule by means of which the right given may be enjoyed and protected. The language used, as well as the object to be accomplished, is to be looked into in ascertaining the intention of the provision. As said in Willis v. Mabon, 48 Minn. 140, 50 N.W. 1110, 16 L.R.A. 281, 31 Am.St.Rep. 626: 'The question in every case is whether the language of a constitutional provision is addressed to the courts or the Legislature. Does it indicate that it is intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the language used and the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed are fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing.' * * * As expressed by one court, whether it is intended thereby to declare personal rights of a citizen or to define a rule for the government of the Legislature; and if the former, it is legislative, and needs no legislation to give it force. It is plainly expressed in the provision itself in this case that its reserved rights are to be independent of the Legislature, and is sufficiently specific that it may be carried out without legislative aid * * * and in the last clause it provides that the Secretary of State, in submitting to the people the matter referred, shall be governed by the general laws until further provision is made by the Legislature, thus not only contemplating that such legislation is not necessary as to procuring and presenting the petition, but also forestalling any possibility of defeat, by inaction of the Legislature in regard to the manner of its submission to the people. As said in Willis v. Mabon, supra: 'The object being to put it beyond the power of the Legislature to render them nugatory by refusing to enact legislation to carry them

into effect.' If it were not self-executing, even though it were mandatory upon the Legislature to make provision to carry it into effect, there is no power to compel it to do so. The exercise of that power in any particular case must depend on the volition of the Legislature. Cooley's Const. Lim. (7th Ed.) 121; In re State Census, 6 S.D. 540, 62 N.W. 129; People ex rel. v. Rumsey, 64 Ill. 44. Thus a strong reason appears why it was intended to be self-executing, and it should be so considered."

The case of State ex rel. Dotta v. Brodigan, 37 Nev. 37, 138 P. 914, which heretofore has construed section 3, has no application to the present situation. There the proposed legislation concerned a referendum to the voters of one county only, and this court held that the fact that section 3 was not self-executing in such cases was emphasized by the provision therein that "the legislature may provide by law for the manner of exercising the initiative and referendum powers as to county and municipal legislation."

Inasmuch as we have concluded that section 3 has been self-executing ever since 1912, its amendment in 1958 accomplished by the method therein provided must be recognized as valid.

2.  Respondent's second contention is that even if the provisions of section 3 are self-executing as to constitutional amendments, the petition in containing the signatures of only 9,445 qualified electors was insufficient, and while this would be more than 10 percent of the 87,026 ballots cast at the preceding general election, it is far short of the "total number of votes cast at the general election last preceding."

If we were to approve this argument of respondent, the ten percent would be applied to a figure calculated by multiplying the number of candidates and propositions voted upon by such voters by the number of voters and the result would require a number of signers in excess of the total population of the State of Nevada. Respondent seems to concede the absurdity of such construction, but claims nevertheless that this wording renders the section so ambiguous as to make impossible

a determination of the number of signatures required.

It appears to us from the wording of the section and from the authorities that the meaning intended by the words "total number of votes cast" as used in the 1958 amendment, was "total number of ballots cast." Gottstein v. Lister, 88 Wash. 462, 153 P. 595; cf. State ex rel. Hunting v. Brodigan, 44 Nev. 306, 194 P. 845.

The petition appearing to be legally sufficient, it is ordered that a peremptory writ of mandamus issue forthwith directing respondent to file the petition and to otherwise carry out the provisions of said section 3.

BADT and PIKE, JJ., concur.