**138 Nev., Advance Opinion 46**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

BARBARA K. CEGAVSKE, IN HER
OFFICIAL CAPACITY AS NEVADA
SECRETARY OF STATE,
Appellant,
vs.
ROBERT HOLLOWOOD, AN
INDIVIDUAL; KENNETH BELKNAP,
AN INDIVIDUAL; NEVADANS FOR
FAIR GAMING TAXES PAC, A
NEVADA COMMITTEE FOR
POLITICAL ACTION; FUND OUR
SCHOOLS PAC, A NEVADA
COMMITTEE FOR POLITICAL
ACTION; NEVADA RESORT
ASSOCIATION, A NEVADA
NONPROFIT CORPORATION;
GREATER LAS VEGAS CHAMBER OF
COMMERCE, D/B/A VEGAS
CHAMBER, A NEVADA NONPROFIT
CORPORATION,
Respondents.

No. 84420



FILED

JUN 28 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting writs of mandamus and prohibition barring the Secretary of State from placing initiative petition questions on the ballot. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed in part and reversed in part.*

Great Basin Law and Wayne O. Klomp, Reno,
for Appellant.

SUPREME COURT
OF
NEVADA

(O) 1947A

22-20397

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager, Daniel Bravo, and Eric Levinrad, Las Vegas; McLetchie Law and Margaret A. McLetchie, Las Vegas,
for Respondents Robert Hollowood, Kenneth Belknap, Nevadans for Fair Gaming Taxes PAC, and Fund Our Schools PAC.

Lewis Roca Rothgerber Christie LLP and Joel D. Henriod, Daniel F. Polsenberg, Abraham G. Smith, and Kory J. Koerperich, Las Vegas,
for Respondents Nevada Resort Association and Greater Las Vegas Chamber of Commerce.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

This appeal involves two verified initiative petitions to place questions on the ballot for the Nevada 2022 general election and the sponsors' withdrawal of the initiative petitions. Although Nevada law provides a procedure to withdraw an initiative petition and directs that "no further action may be taken on [a withdrawn] petition," NRS 295.026(2), Secretary of State Barbara Cegavske refused to honor the withdrawals of the two petitions at issue here. The sponsors then sought and obtained writs of mandamus and prohibition from the district court to compel her to recognize the withdrawals and thereby prevent the questions from appearing on the 2022 ballot. The Secretary of State appeals, arguing that the statute setting forth the withdrawal procedure, NRS 295.026, is unconstitutional. We conclude that NRS 295.026 is a permissible exercise of the Legislature's power to enact statutes to facilitate the people's initiative power and is thus not unconstitutional. Because the statute

compels the Secretary of State not to act on the withdrawn initiative petitions, the district court properly issued a writ of mandamus compelling the Secretary not to act. But because the act of placing matters on a ballot is ministerial, it is not the sort of action that is subject to prohibition, and therefore the district court abused its discretion in issuing a writ of prohibition. We thus affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Respondents Robert Hollowood, Kenneth Belknap, Nevadans for Fair Gaming Taxes PAC, and Fund Our Schools PAC sponsored two initiative petitions for the purposes of funding education via an increase in Nevada sales tax and a tax on gaming. The initiative petitions listed Hollowood and Belknap as among the three individuals permitted to withdraw or amend each initiative petition. The sponsors obtained the required signatures and submitted them to the Secretary of State, who verified them and submitted the initiative petitions to the Legislature for consideration. The Legislature did not act on the initiative petitions but did reach an agreement to otherwise increase taxes to fund education. Thereafter, Hollowood and Belknap each filed a petition withdrawal form with the Secretary of State's office.

On request from the Governor's office, the Attorney General issued an opinion as to whether the Nevada Constitution prevents initiative petition sponsors from withdrawing a petition. The Attorney General opined that it did not. 2021-04 Op. Att'y Gen. The opinion (1) framed the Secretary of State's role as ministerial, (2) found no constitutional provisions limiting withdrawal of an initiative petition such that there was no direct conflict between the constitution and the statute, (3) interpreted NRS 295.026 as imposing a procedural right permitting sponsors to withdraw a petition, and (4) concluded that the Secretary's duty to place a

matter on the ballot was owed to the sponsors and would be waived by the sponsors' withdrawal of the petition. *Id.*

The Secretary disagreed with the Attorney General opinion, concluded that she had a constitutional duty to place verified initiative petitions on the ballot, and thus refused to recognize the sponsors' withdrawal. The sponsors petitioned the district court for writs of mandamus and prohibition. Respondents Nevada Resort Association and Greater Las Vegas Chamber of Commerce successfully moved to intervene and joined in the petition. The district court concluded that NRS 295.026 permissibly expands initiative sponsors' rights by providing a clear procedure and deadlines to withdraw a petition. The court further held that the Secretary's duty to place a matter on the ballot presupposed a valid petition and that a withdrawal consistent with NRS 295.026 makes the petition void and thus no longer valid, such that there was no further action for the Secretary to take. The district court therefore issued writs of mandamus and prohibition. The Secretary of State appeals.

## DISCUSSION

A writ of mandamus may be sought to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931, 267 P.3d 777, 779 (2011). A writ of prohibition may issue if an individual exercising judicial functions or a tribunal acts in excess of its jurisdiction. NRS 34.320; *Goicoechea v. Fourth Judicial Dist. Court*, 96 Nev. 287, 289-90, 607 P.2d 1140, 1141 (1980). While this court reviews a district court decision to grant or deny a writ petition for an abuse of discretion, *DR Partners v. Bd. of Cty. Comm'rs*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000),

questions of statutory or constitutional interpretation are reviewed de novo, *Lawrence v. Clark County*, 127 Nev. 390, 393, 254 P.3d 606, 608 (2011).

*A writ of prohibition is not appropriate to bar the Secretary of State's ministerial action*

We first resolve the Secretary's challenge to the writ of prohibition. The district court issued a writ of prohibition ordering the Secretary not to place the initiative petitions on the general election ballot. The Secretary argues that the order fails to identify any judicial or quasi-judicial functions being carried out and is therefore deficient. We agree and reverse the portion of the order granting a writ of prohibition.

In addition to barring the extrajurisdictional exercise of judicial power, a writ of prohibition may be issued to curtail the inappropriate exercise of quasi-judicial power, *Mineral County v. State, Dep't of Conservation & Nat. Res.*, 117 Nev. 235, 243-44, 20 P.3d 800, 805-06 (2001), but the writ does not serve to curtail the exercise of ministerial power, *Gladys Baker Olsen Family Tr. ex rel. Olsen v. Eighth Judicial Dist. Court*, 110 Nev. 548, 552, 874 P.2d 778, 781 (1994). After a ballot measure is determined to be procedurally sufficient, the Secretary's duty to place it on the ballot is ministerial. *Las Vegas Taxpayer Accountability Comm. v. City Council of Las Vegas*, 125 Nev. 165, 172-75, 208 P.3d 429, 434-36 (2009) (requiring that a procedurally proper ballot measure be placed on the ballot and rejecting argument that the duty to do so was not ministerial); *see also Caine v. Robbins*, 61 Nev. 416, 423, 131 P.2d 516, 519 (1942) (quoting with approval authority describing the Secretary of State's publishing proposed constitutional amendments as "ministerial, involving the exercise of no discretion").

The district court erred in concluding that the Secretary of State was subject to a writ of prohibition in this context.[1] *See State ex rel. Marshall v. Down*, 58 Nev. 54, 57, 68 P.2d 567, 567 (1937) (concluding that enacting an amendment to a city charter after it had been approved was ministerial and not judicial and thus not subject to prohibition). Accordingly, we reverse the district court order to the extent that it issued a writ of prohibition.

*Mandamus relief was warranted to compel the Secretary of State to take no action on the withdrawn initiative petitions*

The district court also issued a writ of mandamus that directed the Secretary of State to withdraw the initiative petitions consistent with NRS 295.026 and her duty to take no further action with respect to the withdrawn petitions. The Secretary argues that the Nevada Constitution does not permit withdrawal of an initiative petition after the signatures have been verified and that she was obligated to place the initiative

---

[1]Decisions of other state courts support this conclusion, distinguishing the quasi-judicial act of determining whether a measure or candidate is eligible for placement on the ballot from the ministerial act of placing that entry on the ballot. For instance, the Ohio Supreme Court has recognized that prohibition was appropriate when an elections board exercised a quasi-judicial power in barring a referendum from the ballot after reviewing the measure in a hearing, *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 118 N.E.3d 224, 228 (Ohio 2018), whereas merely placing a measure already determined to be sufficient on the ballot is ministerial and thus not subject to the writ of prohibition, *State ex rel. Glass v. Brown*, 368 N.E.2d 837, 837-38 (Ohio 1977). The South Dakota Supreme Court concluded that prohibition would be suitable where the Secretary of State had to determine eligibility for office in deciding whether to certify a candidate. *State ex rel. Grigsby v. Ostroot*, 64 N.W.2d 62, 65 (S.D. 1954). The Oklahoma Supreme Court is in accord, distinguishing such a determination from a ministerial act not subject to the writ. *State ex rel. Heartsill v. Cty. Election Bd. of Carter Cty.*, 326 P.2d 782, 786 (Okla. 1958).

Supreme Court
of
Nevada

(O) 1947A

petitions' questions on the ballot after the Legislature did not act on them. We disagree and affirm the portion of the district court order granting a writ of mandamus.

We review a statute's constitutionality de novo. *Nevadans for Nev. v. Beers*, 122 Nev. 930, 939, 142 P.3d 339, 345 (2006). The challenger must overcome the presumption that a statute is constitutional with a clear showing of invalidity. *Id.* If a statute lends itself to both a constitutional and an unconstitutional interpretation, we apply the interpretation that does not violate the constitution. *Sheriff v. Wu*, 101 Nev. 687, 689-90, 708 P.2d 305, 306 (1985). And in interpreting a constitutional provision, we look to the rules of statutory construction and interpret unambiguous constitutional provisions according to their plain meaning. *We the People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1170 (2008). Thus, the state constitution is to be read as a whole, and "the interpretation of a statute or constitutional provision will be harmonized with other statutes or provisions to avoid unreasonable or absurd results." *Id.* at 881, 192 P.3d at 1171.

Article 19, Section 2 of the Nevada Constitution sets forth the people's power to propose or amend a statute and to propose a constitutional amendment. In relevant part, it provides that "the people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this Constitution, and to enact or reject them at the polls." Nev. Const. art. 19, § 2(1). An initiative petition must be proposed by a qualifying number of registered voters, as verified by the Secretary of State after the petition has been filed with the Secretary. *Id.* art. 19, §§ 2(2), 3. If the initiative petition "proposes a statute or an amendment to a statute," the Secretary must submit the petition to the

Legislature for its consideration in the next session, and the Legislature may enact or reject the proposal as posed. *Id.* art. 19, § 2(3). If the Legislature does not timely act on the petition, "the Secretary of State shall submit the question of approval or disapproval of such statute or amendment to a statute to a vote of the voters at the next succeeding general election." *Id.*

The Nevada Constitution authorizes the Legislature to enact statutes to "facilitate the operation" of the people's initiative power. *Id.* art. 19, § 5. As relevant here, the Legislature has adopted a procedure to withdraw an initiative petition. NRS 295.026(1) provides that "[a] petition for initiative or referendum may be withdrawn if a person authorized pursuant to NRS 295.015 to withdraw the petition submits a notice of withdrawal to the Secretary of State on a form prescribed by the Secretary of State."[2] Withdrawal must be timely. *Id.* After a petition is withdrawn, "no further action may be taken on that petition." NRS 295.026(2).

*The Secretary of State has not shown that Article 19 creates public rights that are violated by withdrawal of a verified initiative petition*

The Secretary of State first argues that the initiative-petition process vests a right held by the individuals who signed the initiative petition or the voting public in general that precludes the withdrawal of a verified petition. We disagree.

This court will not interfere with the Legislature's broad power to enact statutes absent "a specific constitutional limitation to the contrary." *Nevadans for Nev.*, 122 Nev. at 939, 142 P.3d at 345. The

---

[2]NRS 295.015(1)(b)(3) provides that the initial filing of the petition with the Secretary of State—before any signatures may be obtained—must identify no more than three persons authorized to withdraw the petition.

Secretary's argument rests on Article 19, Section 2 of the Nevada Constitution. But Section 2 does not address withdrawal of an initiative petition. And nothing in Section 2 precludes withdrawal. The Secretary has not identified a specific constitutional limitation on the Legislature's power to enact NRS 295.026.

Rather, Article 19, Section 5 of the Nevada Constitution specifically empowers the Legislature to "provide by law for procedures to facilitate the operation" of the people's power to propose statutory and constitutional amendments by initiative petition. Whether and how a petition might be withdrawn is independent of the substantive proposal in the petition; issues regarding withdrawal more reasonably implicate the Legislature's power to enact facilitating procedural laws than the general reservation of the people's power to propose amendments and to enact or reject them at the ballot box. Indeed, this court has upheld other statutory requirements for initiative petitions that might otherwise be considered improper limitations on the "power to propose" and barred initiative petitions that failed to meet those statutory requirements. *See, e.g., Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 700, 191 P.3d 1138, 1158 (2008) (barring initiative from the ballot for failing to comply with the circulator's affidavit requirement set forth in NRS 295.0575); *Nevadans for Nev.*, 122 Nev. at 940, 950, 142 P.3d at 345, 352 (barring initiative petition violating the statutory single-subject rule after concluding that "NRS 295.009's description of effect requirement and NRS 295.061's proviso allowing for a challenge to that description are legitimate procedures"). Accordingly, if a statute is a permissible exercise of the Legislature's Article 19, Section 5 authority (which we address below with

SUPREME COURT
OF
NEVADA

(O) 1947A

9

respect to NRS 295.026), then it does not violate the reservation of power by the people in Article 19, Section 2.

The authorities the Secretary relies on to argue that NRS 295.026 infringes on public rights are unavailing. She relies primarily on three scarcely cited cases—*Rea v. City of Reno*, 76 Nev. 483, 357 P.2d 585 (1960); *State v. Scott*, 52 Nev. 216, 285 P. 511 (1930); and *Wilson v. Koontz*, 76 Nev. 33, 348 P.2d 231 (1960)—that are distinguishable and do not stand for the broad propositions asserted.

The Secretary cites *Rea* for the proposition that the initiative process consists of the power to propose a law that *must* then proceed to a vote at the polls. This is incorrect. *Rea* held that the initiative power reserved to the municipality's electors was the power to propose laws; such proposed laws would not be enacted through the initiative petition process itself but only after approval by the voters. 76 Nev. at 486, 357 P.2d at 586. The court in *Rea* thus distinguished the initiative process "from a power which would effect a legislative act without an election." *Id.* The case does not speak to whether initiative sponsors may withdraw a petition or whether an initiative petition's signatories or the public acquire any rights in a petition.

The Secretary cites *Scott* for the proposition that the signatories control their signatures until the petition has been filed and verified, at which point the public becomes interested and control passes to the public from the signatories, who can no longer remove their signatures. This reads too much into *Scott*. There, the court considered signatories' attempts to withdraw their signatures from a recall petition. 52 Nev. at 224, 285 P. at 512. *Scott* thus involved the power to stage a special election to recall public officers, a different constitutional power than that at issue here. *See* Nev.

SUPREME COURT
OF
NEVADA

(0) 1947A

Const. art. 2, § 9 (stating recall power and procedures). Viewing *Scott*'s holding in context counsels against the Secretary's broad reading. Notably, we have never relied on *Scott* to interpret the initiative power under Article 19, Section 2. Even assuming that *Scott* is instructive notwithstanding this distinction, the court held that the signatories there could not withdraw their signatures because no statute or constitutional provision permitted them to do so. 52 Nev. at 229, 285 P. at 514. *Scott* does not suggest that upon filing of the recall petition the public obtains a vested right precluding its withdrawal. Rather, if anything, it suggests that withdrawal is permissible where, as here, a statute provides for it. *See id.* at 230, 285 P. at 515 (quoting *Bordwell v. Dills*, 66 S.W. 646, 647 (Ark. 1902), for the proposition that the public becomes interested and signers may not withdraw their signatures from a recall petition "[i]n the absence of something in the statute permitting it").

The Secretary takes *Wilson* for the proposition that courts may not read extraconstitutional elements into the initiative power and that to do so frustrates the aim of permitting the people to legislate directly through the initiative process. But *Wilson* merely holds that the initiative petition provisions are self-executing, such that statutes are not needed to give them effect. 76 Nev. at 38-39, 348 P.2d at 233-34. *Wilson* thus has nothing to say about any statutes that are enacted to facilitate the initiative power's operation.

Accordingly, the Secretary of State has not shown that NRS 295.026 is unconstitutional on the premise that it violates the constitutional rights of initiative petition signatories or the public.

*Withdrawal voids the initiative petitions such that there is no question for the Secretary of State to place on the ballot*

The Secretary of State next argues that NRS 295.026 conflicts with the duty that she "shall" place a question on the ballot following the Legislature's inaction on the petition. The Secretary's argument neglects the obligation to harmonize that duty with the Legislature's power to enact statutes facilitating the people's initiative power. And her argument is especially unpersuasive when considered in light of our precedent establishing that a withdrawn petition is void and the Secretary of State has no duty to act with respect to a void petition.

*Rogers v. Heller* is instructive. *Rogers* held an initiative void when it failed to comply with the constitutional requirement that a proposal making an appropriation must be offset by a sufficient tax. 117 Nev. 169, 171, 18 P.3d 1034, 1035 (2001) (applying Article 19, Section 6 of the Nevada Constitution). *Rogers* specifically noted that because the initiative petition was "void, the Secretary of State's transmittal of the Initiative to the Legislature was ineffective, and the Legislature is barred from taking further action on it." *Id.* Three points may be taken from this. First, *Rogers* shows that action may not be taken on a void petition and that a void petition terminates the initiative process and any constitutional duties that might otherwise be owed as part of that process. Second, NRS 295.026 was enacted after *Rogers*, and its mandate in subsection 2 that "no further action may be taken on that [withdrawn] petition" closely mirrors the *Rogers* statement barring the Legislature from "taking further action on" a void initiative, *see* 2017 Nev. Stat., ch. 505, § 30, at 3369 (enacting NRS 295.026), suggesting that the language should be read similarly. Third, *Rogers* concerned an initiative petition that the Secretary of State had verified and transmitted to the Legislature, 117 Nev. at 172, 18 P.3d at 1036, and on

which the Legislature did not act after the court barred it from doing so. Under the Secretary of State's reasoning here, the Secretary in *Rogers* would have been compelled to place the question on the ballot because of legislative inaction even though the court had determined the initiative petition was void.[3] That outcome would have been both unreasonable and absurd. It would have presented to the voters a ballot question that was facially unconstitutional. *Rogers* instructs that an initiative on which action may not be taken is void and that a void initiative terminates the process set forth in Article 19, Section 2, including any constitutional duties that might otherwise be owed as part of the initiative process.[4]

---

[3]The 2002 general election ballot did not include the question proposed by the initiative petition invalidated in *Rogers* (the "Nevada Tax Fairness and Quality School Funding Accountability Act"). *See generally Rogers*, 117 Nev. at 172, 18 P.3d at 1035 (describing the proposed statutory amendment); Dean Heller, Sec'y of State, State of Nev. Statewide Ballot Questions 2002, https://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/2002.pdf (last visited June 10, 2022).

[4]The Secretary of State takes *Rogers* for the proposition that withdrawing a petition is impermissible because *Rogers* barred the Legislature from altering the proposed amendment to cure the constitutional deficiency. This is mistaken in several regards. First, *Rogers* rejected an argument that the unconstitutional provisions could be severed, concluding that severability applied to formally enacted statutes, not proposed amendments. 117 Nev. at 177, 18 P.3d at 1039. *Rogers* thus considered a narrow issue in that regard. Second, *Rogers* observed that the constitution expressly prohibited the Legislature from changing the initiative petition's proposal, which it must enact or reject as posed. *Id.* at 178, 18 P.3d at 1040. In contrast, Article 19 does not expressly address withdrawal whatsoever but does authorize the Legislature to enact statutes that facilitate operation of the initiative power. Third, *Rogers* concluded that the initiative petition "should proceed, *if at all*, as originally proposed and signed." *Id.* at 178, 18 P.3d at 1039-40 (emphasis added). Because the emphasized language indicates it is not a given that the initiative petition must proceed, *Rogers* does not support the proposition that withdrawal is constitutionally improper.

The court reached conclusions similar to *Rogers* in *Glover v. Concerned Citizens for Fuji Park & Fairgrounds*. *Glover* held that an initiative petition concerning an administrative act was not within the initiative power's scope, which encompasses only legislative and not administrative action. 118 Nev. 488, 494, 50 P.3d 546, 549 (2002), *overruled in part on other grounds by Garvin v. Ninth Judicial Dist. Court*, 118 Nev. 749, 59 P.3d 1180 (2002). The court observed that "the requirement that an initiative propose only legislation is a threshold requirement" because it goes to the scope of the people's initiative power and, therefore, "an initiative that fails to meet [this] threshold [requirement] is void." *Id.* at 498-99, 50 P.3d at 552. Like the case before us today, *Glover* involved a verified initiative petition that was not acted on by the legislative entity. *Id.* at 490-91, 50 P.3d at 547-48. Based on the court's decision that it was void, the petition was not ultimately placed on the ballot in that form. *See* Carson City Ballot Questions from 1970 thru Present, at 19, https://www.carson.org/home/showpublisheddocument/37739/ 635984946921000000 (last visited June 10, 2022) (listing different ballot question involving Fuji Park).

Although *Rogers* and *Glover* involved petitions that were void because they did not comply with constitutional requirements, initiative petitions may also be void if they fail to comply with statutory requirements; voidness thus does not turn solely on constitutional compliance. For example, in *Las Vegas Convention & Visitors Authority v. Miller*, we concluded that signatures on an initiative petition were void when they failed to meet statutory requirements. 124 Nev. 669, 673, 191 P.3d 1138, 1141 (2008). As a result, we concluded that the initiative petition question was barred from appearing on the ballot. *Id.* at 700, 191 P.3d at 1158; *see*

*also Lauritzen v. Casady*, 70 Nev. 136, 261 P.2d 145 (1953) (failure of county commission to schedule election within statutory time requirements rendered the election void).

The Secretary of State argues that this court has held that a petition must be placed on the ballot even if it may be unconstitutional and thus futile, citing *Greater Las Vegas Chamber of Commerce v. Del Papa*, 106 Nev. 910, 802 P.2d 1280 (1990). This misunderstands that decision, which held that an initiative question may not be excluded from the ballot based on the possibility that the substantive change it proposes will be found unconstitutional in the future should it be approved. *Greater Las Vegas Chamber of Commerce*, 106 Nev. at 917, 802 P.2d at 1281. In fact, *Greater Las Vegas Chamber of Commerce* supports barring the initiatives' questions at issue here from the ballot, given that it recognized that "this court has intervened to prevent a ballot question from going to a vote of the people" where a procedural violation was present. 106 Nev. at 916, 802 P.2d at 1281. Where an initiative sponsor has filed a petition withdrawal form with the Secretary of State to render the initiative void, there is a procedural deficiency, not a substantive deficiency with the proposal. *See Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 883, 141 P.3d 1224, 1228 (2006) (explaining the different types of challenges that may be levied against an initiative petition and providing that challenges "based on asserted procedural defects, are virtually always ripe for preelection review, since the question to be resolved is whether a proposal has satisfied all constitutional and statutory requirements for placement on the ballot").

We conclude that NRS 295.026(2)'s directive that "no further action may be taken on [a] petition" after it has been withdrawn renders a withdrawn initiative petition void. Based on our precedent, a void petition

is excluded from the initiative process set forth in Article 19. This construes NRS 295.026 in a way that is constitutional and neither absurd nor unreasonable. It further harmonizes the Legislature's power to enact facilitating laws with the Secretary of State's duty to place measures on the ballot.

*NRS 295.026 facilitates the provisions in Article 19 guaranteeing the initiative power to the people*

Lastly, the Secretary of State argues that NRS 295.026 does not facilitate the provisions of Article 19 but instead infringes on rights reserved to the people. For the reasons discussed above, NRS 295.026 does not infringe on the reservation provision stated in Article 19, Section 2(1). Further, the statute facilitates the operation of Article 19's provisions guaranteeing the people's initiative power.

As noted, Article 19, Section 5 of the Nevada Constitution provides that the Legislature "may provide by law for procedures to facilitate the operation" of the provisions of Article 19. This court has upheld statutes governing the initiative-petition process where those statutes facilitate rather than obstruct the exercise of the initiative power. *See, e.g.*, *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37, 293 P.3d 874, 876 (2013) (concluding that the statutorily required description of the initiative's effect facilitates rather than obstructs the initiative power so long as the description is straightforward, succinct, and nonargumentative); *Nevadans for Nev. v. Beers*, 122 Nev. 930, 940, 142 P.3d 339, 345 (2006) (holding that statutes requiring a description of the initiative's effect and permitting a challenge to that description facilitate the people's initiative power); *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 902, 141 P.3d 1235, 1240 (2006) (holding that a statute

limiting an initiative to a single subject facilitates the right by preventing sponsors from presenting confusing petitions addressing multiple subjects).

The circumstances surrounding the initiative petitions here demonstrate that the statutory withdrawal process facilitates the initiative power. The sponsors circulated initiative petitions that proposed to raise funds for education by increasing sales and gaming taxes. While the Legislature did not act on the petitions after the Secretary of State transmitted them, it did approve a bill to raise mining taxes to fund education. The sponsoring respondents withdrew the petitions after increased education funding was secured through the legislative representatives of the people during the legislative session. The circumstances motivating the initiative petitions had changed, and the sponsors concluded that the statutory amendments proposed by the petitions were no longer warranted. Providing a means for initiative sponsors to respond to changing circumstances or to the realization of undesirable or unintended consequences facilitates the exercise of the initiative power by making the initiative process more flexible. If a situation changes, sponsors may conclude that a proposal is unwise or that an updated version of the proposal is needed, and NRS 295.026 allows them to adjust accordingly.

Further, it is useful to consider the landscape before NRS 295.026 was enacted. The Deputy Secretary of State for elections testified before the Legislature when the statute was proposed. Hearing on A.B. 478 Before the S. Comm. on Legis. Operations & Elections, 79th Leg., at 14 (Nev., May 3, 2017). He explained that the Secretary of State's office processed withdrawal requests in an ad hoc fashion, lacking any formal process constraining or governing the process. *Id.* He requested statutory

guidance on the matter. *Id.* NRS 295.026 makes plain to anyone sponsoring or contemplating sponsoring an initiative that he or she has the power to withdraw it and how to do so. In other words, the statute clarifies an issue that previously caused confusion and inconsistencies. Accordingly, we conclude that NRS 295.026 facilitates the operation of Article 19 and thus is a constitutional exercise of the Legislature's Article 19, Section 5 authority.

### *Mandamus is appropriate*

As detailed, NRS 295.026(2) provides that no action may be taken when a petition has been withdrawn pursuant to its terms. The parties do not dispute the sponsors' compliance with NRS 295.026(1) in filing to withdraw the petitions. NRS 295.026(2) thus bars the Secretary of State from acting on the initiative petitions. As the law compels the Secretary not to place the initiatives' questions on the ballot, the district court did not abuse its discretion in issuing a writ of mandamus. NRS 34.160 (providing that a writ of mandamus may seek to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station); *see DR Partners v. Bd. of Cty. Comm'rs*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) (reviewing district court's decision on a writ petition for an abuse of discretion); *Lundberg v. Koontz*, 82 Nev. 360, 363, 418 P.2d 808, 809 (1966) ("Mandamus is appropriate to prevent improper action by the Secretary of State, as well as to compel him to perform an act which is his duty under the law.").

### *CONCLUSION*

Article 19 of the Nevada Constitution sets out the initiative petition process, does not specifically bar withdrawal of an initiative petition, and permits the Legislature to enact statutes facilitating the initiative-petition process. NRS 295.026 facilitates this process by stating

SUPREME COURT
OF
NEVADA

(O) 1947A

18

the withdrawal power and imposing deadlines on its exercise. The statute gives petition sponsors the ability to respond to changed circumstances and clarity as to how and when withdrawal is performed. NRS 295.026 is thus facially constitutional. NRS 295.026 provides that no action may be taken on a petition that has been timely withdrawn. Accordingly, a withdrawn petition is void. Because the petitions here are void, the Secretary's duty to place them on the ballot has been nullified, consistent with our precedent barring placement of void initiative petitions on the ballot, regardless of whether they have been verified. Withdrawal of the initiative petitions does not infringe upon any constitutional right or duty. We therefore affirm the district court's grant of mandamus relief. But because the act of placing a matter on the ballot is ministerial, not judicial or quasi-judicial, and thus was not the type of conduct falling within the scope of a writ of prohibition, we reverse the district court order to the extent that it granted a writ of prohibition.

_____, J.
Stiglich

We concur:

_____ C.J.
Parraguirre

_____, J.
Cadish

_____, J.
Herndon

 

HARDESTY, J., with whom SILVER and PICKERING, JJ., agree, concurring in part and dissenting in part:

When the Legislature has rejected or not timely acted upon a verified initiative petition proposing a statutory amendment or enactment, Article 19, Section 2(3) of the Nevada Constitution provides that the Secretary of State *shall* submit the question proposed for approval by the voters by placing the question on the next general election ballot. NRS 295.026 obstructs the Secretary's duty in this regard by terminating the mandatory constitutional process set forth here, and the court accordingly should have held NRS 295.026 unconstitutional. I disagree with the majority's conclusion to the contrary and respectfully dissent in part.

The plain language of Article 19, Section 2 of the Nevada Constitution provides all the guidance that the court needs to resolve this appeal. This court applies unambiguous constitutional provisions according to their plain language, *Nevadans for Nev. v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006), and I find no ambiguity in the relevant constitutional provisions here. As the majority correctly observes, this section states the people's power to propose a statute, statutory amendment, or constitutional amendment and to decide on that proposal at the polls. Nev. Const. art. 19, § 2(1).

Critically, Article 19 spells out the precise procedure for exercise of the initiative right in detail, and I maintain that this procedure must be adhered to in order to protect and implement the right it establishes. *See We the People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1170-71 (2008) ("When the Legislature's intent is clear from the plain language, this court will give effect to such intention and construe the statute's language to effectuate rather than nullify its manifest

SUPREME COURT
OF
NEVADA

(O) 1947A

purpose."). Where an initiative petition proposes to enact or amend a statute, Section 2 requires it to be signed by at least 10 percent of the voters who voted in the most recent general election in at least 75 percent of the state's counties, including at least 10 percent of those who voted statewide. Nev. Const. art. 19, § 2(2). Upon filing with the Secretary of State, circulation of the petition ceases, and that office takes up its charge to verify that the signatures affixed to the petition suffice. *Id.* art. 19, §§ 2(3), 3. Once verified, "[t]he Secretary of State *shall* transmit such petition to the Legislature as soon as the Legislature convenes and organizes." *Id.* art. 19, § 2(3) (emphasis added). Now subject to the Legislature's consideration, "[t]he petition *shall* take precedence over all other measures except appropriation bills, and the statute or amendment to a statute proposed thereby *shall* be enacted or rejected by the Legislature without change or amendment within 40 days." *Id.* (emphases added). If the Legislature wants to substitute something else for what the voters have proposed, the constitution prescribes the route it must pursue: "If the Legislature rejects such proposed statute or amendment, the Governor may recommend to the Legislature and the Legislature may propose a different measure on the same subject, in which event, after such different measure has been approved by the Governor, the question of approval or disapproval of each measure shall be submitted by the Secretary of State to a vote of the voters at the next succeeding general election," together with the version proposed by the petition. *Id.* The plain language of Article 19, Section 2 sets forth the initiative power in exacting detail and gives little doubt that each successive step in its procedure is mandatory. *See* NRS 0.025(1)(d) ("'Shall' imposes a duty to act.").

Looking to the initiative petitions before us, the steps detailed above in Article 19, Section 2 were all followed up to the point that the Secretary of State transmitted the proposals to the Legislature. However, the essence of the dispute here lies in the Legislature's addition of a new option to those given by Article 19, namely, the withdrawal of an initiative petition. The withdrawal clearly contradicts the next step in the procedure, where after transmittal to the Legislature, if that body rejects or does not timely act on the petition, as here, "the Secretary of State *shall* submit the question of approval or disapproval of such statute or amendment to a statute to a vote of the voters at the next succeeding general election." Nev. Const. art. 19, § 2(3) (emphasis added). Post-transmittal withdrawal that prevents the voters from considering the proposal at the next election is not one of the options the constitution provides. I conclude that the plain language of the provision provides the court with clear guidance: the Secretary must place the initiative petitions' questions on the ballot under the circumstances presented. The majority instead treats the Secretary's constitutional duty here as a matter that may be prematurely nullified by the withdrawal power stated in NRS 295.026. I disagree with the majority's decision to interpret NRS 295.026 so as to deviate from and thwart a clear constitutional obligation. *See Strickland v. Waymire*, 126 Nev. 230, 241, 235 P.3d 605, 613 (2010) ("The constitution may not be construed according to a statute enacted pursuant thereto; rather, statutes must be construed consistent with the constitution—and rejected if inconsistent therewith." (internal quotation marks and citation omitted)).

This obstruction shows that the court should have held NRS 295.026 unconstitutional, as applied to allow withdraw after a proposal has qualified for and been transmitted to the Legislature. While statutes may

be enacted to facilitate the initiative petition power, Nev. Const. art. 19, § 5, the court must scrutinize any statute purporting to do so to ensure that it in fact facilitates rather than obstructs the exercise of that power, *see Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37-38, 293 P.3d 874, 876 (2013) (observing the limitation on the Legislature's power to enact statutes concerning the initiative power). Here, too, I differ with the majority. As applied here, NRS 295.026(2) bars action on an initiative petition that has been withdrawn, even after its transmittal to the Legislature, at which point, assuming the Legislature does not enact the proposed statute, the constitution requires the proposal to be placed on the ballot. By inserting an additional step in the constitutionally outlined process that prevents subsequent popular vote on a withdrawn matter, the statute obstructs the constitutional process set forth in Article 19, Section 2 and thus should be held to constitute an unconstitutional exercise of the Article 19, Section 5 authority that empowers the Legislature to enact laws subject to this important constraint. *Cf. Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 902, 141 P.3d 1235, 1241 (2006) (rejecting a challenge to a statute's constitutionality where the statute properly facilitated the initiative power). The Article 19 initiative power comprises all of its provisions, and each must be given its force as enumerated; this includes the Secretary's duty to place the questions posed by the initiative petitions here on the ballot. *See Nevadans for Nev.*, 122 Nev. at 944, 142 P.3d at 348 ("The Nevada Constitution should be read as a whole, so as to give effect to and harmonize each provision."). In frustrating the fulfillment of this obligation, NRS 295.026 obstructs instead of facilitates the initiative power. *See Rogers v. Heller*, 117 Nev. 169, 177-78, 18 P.3d 1034, 1039 (2001) (quoting with approval a California Court of

Appeals decision recognizing that California's initiative power allowed the people to propose and adopt their own laws, so long as "certain legal procedure be followed to properly place said laws before the voters"); *see also We the People*, 124 Nev. at 891-92, 192 P.3d at 1177-78 (invalidating a statute providing for a filing deadline that conflicted with the inflexible deadlines set forth in Article 19). The court should have concluded its analysis there and determined that the district court abused its discretion in granting writ relief that impeded the constitutional process, specifically, the Secretary of State's constitutionally outlined duty to place the initiative petitions' proposals on the general election ballot after the proposals were transmitted to the Legislature and not enacted.

Instead, the majority turns to voidness to create a break interrupting the constitutional process, without any provision in Article 19 permitting the procedure set forth to be terminated by statute. While our decisions have undoubtedly recognized that petitions are void in certain instances for constitutional violations, *see, e.g.*, *Rogers*, 117 Nev. at 171, 18 P.3d at 1035 (holding that a violation of Article 19, Section 6 of the Nevada Constitution rendered the petition void), and that signatures are void where they fail to substantially comply with statutory requirements, *Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 673, 191 P.3d 1138, 1141 (2008), this court has not concluded that a statutory authorization may enable an entity to interfere with the constitutional process set forth in Article 19. The majority overreaches in taking from this line of authorities the conclusion that NRS 295.026 may constitutionally void a verified initiative petition in the circumstances of this case. I disagree that our precedents encompass the majority's construction of voidness in this context.

As a procedural matter, I agree with the majority that the writ of prohibition was not the proper vehicle for the district court to decide this case. While I concur with the majority to that limited extent, because I disagree that the Secretary of State's constitutional obligation could be negated, I respectfully otherwise dissent.

_____, J.
Hardesty

We concur:

_____, J.
Silver

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

6